Ervilla Suann OBERG, Respondent,

v.

Travis Dean OBERG, Appellant.

No. WD 47314.

Missouri Court of Appeals,
Western District.

Dec. 21, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 1994.

---

David P. Chamberlain, Liberty, for appellant.

Linda Ray–McKenna, Jefferson City, for respondent.

Before KENNEDY, P.J., and ULRICH and SPINDEN, JJ.

ULRICH, Judge.

Travis Dean Oberg appeals from an order denying his motion to modify the decree of dissolution. Mr. Oberg contends that the trial court erred by failing to reduce his child support obligation because he is incarcerated and his income is substantially reduced.

The judgment of the trial court is affirmed.

The parties' marriage was dissolved by the trial court on November 14, 1991. The decree of dissolution awarded custody of the parties' two minor children to Ervilla Suann (Oberg) Ford, and ordered Mr. Oberg to pay child support in the amount of $25.00 per week per child. At the time of the dissolution, Mr. Oberg was employed selling cellular telecommunications equipment and air time, and he was earning an income of approximately $3,000.00 per month. Prior to selling telecommunications equipment, Mr. Oberg had sold insurance.

Approximately one month after the decree of dissolution, Mr. Oberg was incarcerated. He was convicted of two counts of stealing by deceit and three counts of forgery and was sentenced to one seven-year sentence and four three-year sentences.

On April 14, 1992, Mr. Oberg filed a motion to modify the decree of dissolution, seeking a reduction in his child support obligation because his income as a convicted incarcerated prisoner was substantially reduced. Mr. Oberg testified that, as a prisoner, his current income is $15.00 per month. Mr. Oberg also testified at the hearing on his motion to modify that he expected to be released in November of 1993. Mr. Oberg's motion was denied by the trial court.

As his sole point on appeal, Mr. Oberg claims that the trial court erred by not reducing his child support obligation because of his incarceration and diminished income. Mr. Oberg contends that such a reduction is proper because, as a result of his incarceration, his income dropped from $3,000.00 a month to $15.00 a month.

Whether incarceration is a change in circumstances warranting modification of a child support obligation has not been addressed by any published Missouri appellate court decision. Other state courts are divided over whether imprisonment resulting from lawful conviction should result in a reduction or suspension of the noncustodial parent's child support obligation.

Some courts have denied modification because, despite the incarcerated parent's current lack of income, he or she possessed other assets against which the support obligation could be charged. *Noddin v. Noddin,* 123 N.H. 73, 455 A.2d 1051 (1983) (parent not entitled to modification where he had interest in jointly-owned home which could be applied to meet support obligations); *Proctor v. Proctor,* 773 P.2d 1389 (Utah App.1989) (unpaid child support subtracted monthly from parent's equity interest in marital home).

Some courts have determined that incarceration does not justify reduction or suspension of child support payments regardless of whether an incarcerated parent has other available assets. *In re Marriage of Phillips,* 493 N.W.2d 872 (Iowa App.1992) (an incarcerated parent's lack of available assets does not justify modification of child support obligation); *Ohler v. Ohler,* 220 Neb. 272, 369 N.W.2d 615 (1985) (affirming dismissal of an incarcerated parent's petition to modify for failure to state a cause of action, even though parent was sentenced to a fifteen-year term of imprisonment and had no other assets); *Cole v. Cole,* 70 Ohio App.3d 188, 590 N.E.2d 862 (1990) (the main consideration is not

upon the parent's current inability to pay, but, rather, is upon his long range capacity to earn money); *In re Marriage of Willis*, 109 Or.App. 584, 820 P.2d 858 (1991) *rev'd*, 314 Or. 566, 840 P.2d 697 (1992) (although an incarcerated parent cannot be found in contempt for not paying while in prison, nevertheless the obligation continues). However, most of the courts which have determined that incarceration does not justify reduction or suspension of child support payments, regardless of whether the incarcerated parent has other available assets, have also ruled that the postincarceration collection of the arrearages must be flexible and consider the parent's postrelease financial circumstances. *Davis v. Vance*, 574 N.E.2d 330 (Ind.App. 1991) (upon release and upon becoming gainfully employed, parent will fairly be required to pay the arrearage within the limits of his income and assets at that time); *Mooney v. Brennan*, 257 Mont. 197, 848 P.2d 1020 (1993) (trial court can deny a reduction or suspension of child support obligations even if the jailed parent earns no income and has no assets; however, upon release, repayment of the arrearage may be scheduled by the trial court according to the parent's postincarceration income); *Koch v. Williams*, 456 N.W.2d 299 (N.D.1990) (in order that accruing debt will not hinder parent's rehabilitation, upon his release, the amount to be paid each month can be adjusted as his financial condition then requires); *Parker v. Parker*, 152 Wis.2d 1, 447 N.W.2d 64 (1989) (upon his release from prison, and after becoming gainfully employed, parent may fairly be required to pay the arrearage within the boundaries of his available income and assets at that time).

Some courts have followed an Oregon Court of Appeals decision which was overruled in 1991,[1] and have adopted the rule that, where a noncustodial parent is imprisoned for a crime other than nonsupport, the parent is not liable for child support payments while incarcerated unless it is affirmatively shown that he or she has income or assets to make such payments. *Clemans v. Collins*, 679 P.2d 1041 (Alaska 1984) (remanding case to trial court to determine whether parent has assets or income which

will enable him to meet his current child support obligation, either in whole or in part); *Commissioner of Human Resources v. Bridgeforth*, 42 Conn.Supp. 126, 604 A.2d 836 (1992) (suspending parent's child support obligation during incarceration); *Nab v. Nab*, 114 Idaho 512, 757 P.2d 1231 (App.1988) (case remanded to determine what income or assets are available to parent); *People ex rel. Meyer v. Nein*, 209 Ill.App.3d 1087, 154 Ill. Dec. 436, 568 N.E.2d 436 (1991) (suspending parent's child support obligation during incarceration, but acknowledged that obligation would not be suspended where it is shown that parent has available assets); *Pierce v. Pierce*, 162 Mich.App. 367, 412 N.W.2d 291 (1987) (cancellation of child support arrearage which accrued while the parent was in prison); *Johnson v. O'Neill*, 461 N.W.2d 507 (Minn.App.1990) (remanding case to trial court to compute a child support obligation based upon parent's $64.00 per month prison income); *Kuronen v. Kuronen*, 499 N.W.2d 51 (Minn.App.1993) (remanding case to trial court to consider $20,000.00 in parent's 401K plan in determining whether child support obligation should be modified); *Foster v. Foster*, 99 A.D.2d 284, 471 N.Y.S.2d 867, 869 (1984) (suspending child support payments during incarceration, even though parent had equity in marital home which spouse was using). *Peters v. Peters*, 69 Ohio App.3d 275, 590 N.E.2d 777 (1990) (remanding case to trial court to determine what, if any, assets could be applied to child support); *Leasure v. Leasure*, 378 Pa.Super. 613, 549 A.2d 225 (1988) (child support modified to suspend payments for two years while parent is incarcerated, where trial court considered father's assets and both sides had opportunity to address the issue); *Glenn v. Glenn*, 848 P.2d 819 (Wyo.1993) (trial court did not err by refusing to suspend the child support obligation of a parent imprisoned for life, or by reducing child support obligation to $100.00 per month to match parent's combined prison and disability income of $103.00 per month).

Some courts have combined these approaches. In *Redmon v. Redmon*, 823 S.W.2d 463 (Ky.App.1992), the court refused

---

1. *In re Marriage of Edmonds*, 633 P.2d 4 (Or.App. 1981), *overruled by In re: Marriage of Willis*, 820 P.2d 858 (Or.App.1991), *rev'd*, 840 P.2d 697 (Or. 1992).

to modify an incarcerated parent's child support obligation, and ruled that a parent's property or potential source of assets could be liquidated to pay the obligation. However, the court also held that, upon the parent's release, consideration would be given to his ability to pay the arrearages accumulated during his incarceration. In *Division of Child Support Enforcement v. Barrows,* 570 A.2d 1180 (Del.Supr.1990), the court ruled that, if assets are available to the incarcerated parent, then an income commensurate with his preincarceration earning ability will be imputed to him, and his assets will be liquidated to pay the child support. Once his assets are depleted, then he can request a modification of the amount of his child support obligation.

As the Iowa Supreme Court points out in *In re Marriage of Vetternack,* 334 N.W.2d 761, 763 (Iowa 1983), several major trends emerge from the existing case law: (1) a growing reluctance to modify decrees; (2) a parent's current inability to pay has become less a consideration, and long range capacity to earn money has become more of a consideration; and (3) any voluntariness in a parent's diminished earning capacity has become increasingly an impediment to modification. These trends have been motivated by the policy argument that a parent who stops working as a result of incarceration for criminal conduct nonetheless retains the duty to support his children. Although incarceration is not itself a voluntary situation, it is the foreseeable consequence of behavior that is voluntary and intentional. Therefore, incarceration does not excuse the obligation to support the needs of one's children. The change in financial condition resulting from the voluntary dissipation of one's talents is not sufficient reason for modifying a child support award. *Brennan,* 848 P.2d at 1023; *In re Marriage of Phillips,* 493 N.W.2d at 877; *Vance,* 574 N.E.2d at 331; *Barrows,* 570 A.2d at 1183; *Cole,* 590 N.E.2d at 865–866; *Ohler,* 369 N.W.2d at 618; *Williams,* 456 N.W.2d at 301; *Parker,* 447 N.W.2d at 65; *Noddin,* 455 A.2d at 1053. This rule is consistent with the treatment of any parent who is voluntarily unemployed or underemployed and who accumulates arrearages because of his voluntary inability to pay. *Cole, supra,* at 865.

■ The reasoning in this line of cases is convincing and is applied in this case. However, unique circumstances exist when a parent who is incarcerated does not have assets to satisfy or to continue to satisfy a court ordered child support award. The trial court will consider each such situation on a case-by-case basis. The requirement to pay child support is not punitive but is an obligation imposed by parenthood to satisfy the needs of the parent's child as completely as the parent's circumstances reasonably permit. The courts must, therefore, exercise considerable discretion in this type of case just as they must in all cases in which the financial obligation of a parent to satisfy the needs of the parent's child is at issue. In exercising its discretion to determine the appropriate amount of child support applicable to an incarcerated parent who lacks assets, the trial court must consider a variety of factors, including (1) the length of incarceration experienced for the current conviction and the anticipated remaining period of incarceration, (2) the earning potential of the incarcerated parent following release, (3) the amount of the existing child support award, and (4) the total amount of child support that will accumulate upon the incarcerated parent's discharge.

■ The trial court should also consider that, upon the release of the incarcerated parent, repayment of the arrearage which accumulated during that parent's incarceration may be scheduled by the trial court according to the parent's postincarceration income. While an incarcerated parent's child support obligation may continue to accrue while he is in prison, obviously, the immediate inability to pay the obligation is a significant factor in determining whether contempt or criminal charges for willful failure to pay the obligation are appropriate.

■ Applying the factors to this case, the evidence provided discloses that Mr. Oberg presently has insufficient assets to satisfy the accrued child support award or the payments required. Mr. Oberg anticipates release after two years of incarceration; Mr. Oberg's

existing child support obligation is only $25.00 per week for each of two children; and Mr. Oberg's prior employment experience indicates that he has sufficient earning potential to continue his child support obligation at its existing level, even considering that he will probably experience reduced income immediately after incarceration and for some time compared to the income he realized prior to incarceration. The total of $5,200 will accumulate over two years if none of the obligation is paid during the anticipated period of incarceration. Prior to incarceration, Mr. Oberg received $3,000 income per month. Consequently, the trial court did not err in refusing to modify Mr. Oberg's child support obligation.

The judgment of the trial court is affirmed.

All concur.