No. 79,731

In the Matter of the Marriage of KATHY THURMOND, *Appellant,* and ELLIOTT THURMOND, *Appellee.*

(962 P.2d 1064)

Opinion filed July 10, 1998.

*Amy L. Durkin,* of Legal Aid Society of Topeka, argued the cause, and *Lowell C. Paul,* of Kansas Legal Services, Inc., was with her on the brief for appellant.

No appearance by appellee.

The opinion of the court was delivered by

McFARLAND, C.J.: The district court entered an order suspending Elliott Thurmond's child support obligation during his period of incarceration in the federal penal system for two convictions of bank robbery. Kathy Thurmond, respondent's ex-wife, appeals therefrom. The single issue before us is whether the incarceration of a parent, standing alone, is legal justification for the suspension or modification of that parent's child support obligation as previously judicially determined pursuant to the Kansas Child Support Guidelines. Supreme Court Administrative Order No. 107 (1997 Kan. Ct. R. Annot. 89). This question of law is one of first impression in Kansas.

In a divorce action, K.S.A. 1997 Supp. 60-1610 allows the district court to "make provisions for the support and education of the minor children." Further,

"the court may modify or change any prior order, including any order issued in a title IV-D case, within three years of the date of the original order or a modification order, when a material change in circumstances is shown, irrespective of the present domicile of the child or the parents. If more than three years has passed since the date of the original order or modification order, a material change in circumstances need not be shown. The court may make a modification of child

support retroactive to a date at least one month after the date that the motion to modify was filed with the court."

The Kansas Supreme Court was given the mandate in K.S.A. 20-165 to adopt rules establishing guidelines for the amount of child support to be ordered in any action in this state and has done so. The Child Support Advisory Committee, appointed by the Supreme Court, reviews the statewide child support guidelines, solicits public input regarding the guidelines, and makes recommendations to address new federal mandates such as the Family Support Act of 1988 (Pub. L. No. 100-485, 102 Stat. 2343 [codified in scattered sections of 42 U.S.C.]).

The Kansas Child Support Guidelines are the basis for establishing and reviewing child support orders in the district courts in Kansas. Judges and hearing officers must follow the guidelines. Child support obligations are calculated by completing the Child Support Worksheets. Kansas Child Support Guidelines, § I (1997 Kan. Ct. R. Annot. 89). Use of the guidelines is mandatory and failure to follow the guidelines is reversible error. *In re Marriage of Schwein*, 17 Kan. App. 2d 498, Syl. ¶ 5, 839 P.2d 541 (1992); *In re Marriage of Schletzbaum*, 15 Kan. App. 2d 504, Syl. ¶ 4, 809 P.2d 1251 (1991). Any deviation from the amount of child support determined by the use of the guidelines must be justified by written findings in the journal entry. *Schwein*, 17 Kan. App. 2d at 511; *Schletzbaum*, 15 Kan. App. 2d at 507. Failure to justify deviations by written findings is reversible error. *In re Marriage of Emerson*, 18 Kan. App. 2d 277, 279, 850 P.2d 942 (1993).

The Kansas Child Support Guidelines § VI (1997 Kan. Ct. R. Annot. 105-06) provide in pertinent part:

"Courts have continuing jurisdiction to modify child support orders to advance the welfare of the child when there is a material change in circumstance. In addition to changes of circumstance, which have traditionally been considered by courts, any of the following constitute a material change of circumstance to warrant judicial review of existing support orders:

"A. Change in financial circumstances of the parents or the guidelines which would increase or decrease by 10% or more the Net Parental Child Support Obligation shown on Line D.9. of the worksheet."

As initially stated, the sole issue on appeal is whether the incarceration of a parent, standing alone, is legal justification for the suspension or modification of that parent's child support obligation as previously judicially determined pursuant to the Kansas Child Support Guidelines. As this is a question of law, our scope of review is unlimited. *Farris v. McKune*, 259 Kan. 181, Syl. ¶ 1, 911 P.2d 177 (1996). See also *Scruggs v. Chandlee*, 20 Kan. App. 2d 956, Syl. ¶ 1, 894 P.2d 239 (1995) ("Interpretation of the child support guidelines is a question of law; therefore, this court's standard of review is de novo.").

Only three Kansas cases have touched even peripherally on the issue before us.

In *In re Marriage of Johnson*, 24 Kan. App. 2d 631, 950 P.2d 267 (1997), the father was earning between $30,000 and $33,000 annually as an employee at Exide Battery Corporation. The father had been employed at Exide for about 6½ years. He was ordered to provide health insurance and to pay $231 per month in child support. Three years after this support order, the father was terminated from Exide because he tested positive for marijuana. There were no criminal charges filed nor was the father incarcerated for this illegal conduct. Two days later, the father found a job paying $6 per hour. Approximately 1 month later, the father took a better paying job. Nonetheless, he earned about half the amount he was making at Exide.

The father filed a motion to modify his child support obligation based on his reduction in income. The mother opposed the motion, arguing that the father's voluntary conduct caused his reduction in income and, therefore, his previous income should be imputed to him in calculating the amount of child support. The district court disagreed, finding that a significant change in the father's financial circumstances due to an involuntary job loss and reduced income warranted a modification of child support. The obligation was lowered to $148 per month.

On appeal, the mother argued that the father's loss of income was the result of his voluntary conduct of smoking marijuana and that it should, therefore, be considered a voluntary reduction in

income and his prior income should be imputed to him. The Court of Appeals disagreed. 24 Kan. App. 2d at 633.

The Court of Appeals interpreted language in section II.E.1.d. of the Kansas Child Support Guidelines, which provides that "[w]hen there is evidence that a parent is deliberately underemployed for the purpose of avoiding child support, the Court may evaluate the circumstances to determine whether actual or potential earnings should be used." (1997 Kan. Ct. R. Annot. 91.)

The *Johnson* court found there was no evidence that the father's job loss was the result of an attempt to reduce his child support. Further, the court held that the father had not been charged or convicted of any crime as a result of the incident, thus nullifying the mother's attempt to use the clean hands doctrine to bar the motion.

In *Emerson*, 18 Kan. App. 2d 277, Brad and Michelle were the parents of a disabled child who was receiving a supplemental security income benefit. Brad was incarcerated at the time the divorce hearing was held, had little or no income, and was liable for a restitution payment possibly exceeding $25,000. In light of this evidence the trial court refused to order Brad to pay child support, indicating that it would review this order at a later date. Among other issues, Michelle appealed the trial court's failure to order child support.

With little discussion, the Court of Appeals reversed and remanded for a calculation of child support in the manner required by the guidelines. Because the trial court had made no calculations using the guidelines, the *Emerson* court found this was reversible error. In so holding, the court noted:

"We would point out that we are not compelling any specific award of child support in this case. We do, however, require compliance with the guidelines. If the trial court desires to deviate from the presumed amount called for by the guidelines, it must do so in an appropriate manner. It appears to us from reading the record that the trial court reacted in the manner in which it did due to Brad's incarceration, his lack of income, and the heavy restitution required to be paid. We are not holding that those are not appropriate factors that may be considered in deviating from the guidelines. We reverse because the trial court failed to consider those factors within the framework of the guidelines." 18 Kan. App. 2d at 279.

Modification of a child support obligation was not involved.

In another case, *Brown v. Maloney*, 24 Kan. App. 2d 424, 945 P.2d 424 (1997), a father, incarcerated for an unspecified crime, filed a motion to abate child support payments during this incarceration. He also requested that he be allowed to appear and argue his case. The district court dismissed the motion for failure to prosecute, finding that father had failed to appear. Father appealed the district court's denial of his motion to transport.

The Court of Appeals reversed and remanded for consideration of the motion to abate. While the district court was not required to grant the petitioner's request to be present at the hearing, its summary dismissal of the motion was in error. 24 Kan. App. 2d at 426.

None of these Kansas cases is persuasive herein. No claim was made that incarceration of the obligor, standing alone, was legally sufficient justification for the suspension or modification of the previously established child support obligation.

Fortunately, there is a smorgasbord of cases from other jurisdictions on the precise issue before us. This rich trove is not a matter of chance or coincidence. The United States has enacted a variety of legislation in the last 15 years, including the Child Support Enforcement Amendments of 1994 (42 U.S.C. §§ 651, 653-658, 664 [1994]) and the Family Support Act of 1988. This legislation has placed enormous pressure on the states to develop standardized child support obligation guidelines and to improve the collection thereof or else force major losses of federal funding. See the following for more in-depth discussion of the relevant federal legislation in the area: Elrod, *Child Support Reassessed: Federalization of Enforcement Nears Completion*, 1997 U. Ill. L. Rev. 695 (1997); Legler, *The Coming Revolution in Child Support Policy: Implications of the 1996 Welfare Act*, 30 Fam. L.Q. 519 (1996); Krause, *Child Support Reassessed: Limits of Private Responsibility and the Public Interest*, 24 Fam. L.Q. 1 (1990); Elrod, *Kansas Child Support Guidelines: An Elusive Search for Fairness in Support Orders*, 27 Washburn L.J. 104 (1987).

"Loss of Income Due to Incarceration as Affecting Child Support Obligation," Annot., 27 A.L.R.5th 540, gathers together the

large number of cases spawned in just this one narrow aspect of child support issues arising from the ever-evolving federally mandated state legislation.

For convenience we will designate the following categories for the results reached in cases collected in the annotation. Where modification of a child support obligation is sought, the incarceration of the obligor is held to be:

1.  No justification;
2.  Complete justification; or
3.  One factor to consider.

The rationale applied in each category may be summarized as follows.

## NO-JUSTIFICATION RULE

*Mooney v. Brennan*, 257 Mont. 197, 848 P.2d 1020 (1993), is a good example of this category.

The *Mooney* court stated that it continued to adhere to its prior holdings that a substantial change in the financial condition of the parent is recognized as grounds for modification of a previously-entered child support order. However, given the particular issue before it, the court reasoned that

"a rule absolving a parent of a child support obligation while incarcerated due to a voluntary criminal act is 'in conflict with other well-established principles of domestic relations law . . . .' [*Willis v. Willis*, 109 Or. App. 584, 820 P.2d 858 (1991)]. As we have often held, the support of children is a matter of social concern. *Fitzgerald v. Fitzgerald* (1980), 190 Mont. 66, 70, 618 P.2d 867, 869. 'It is an obligation that the father owes the state as well as his children.' *Fitzgerald*, 618 P.2d at 869." *Mooney*, 257 Mont. at 200.

The court then stated:

" 'Criminal conduct of any nature cannot excuse the obligation to pay support. We see no reason to offer criminals a reprieve from their child support obligations when we would not do the same for an obligor who voluntarily walks away from his job. Unlike the obligor who is unemployed or faced with a reduction in pay through no fault of his own, the incarcerated person has control over his actions and should be held to the consequences.

" 'A person who has a support obligation should not profit from his criminal conduct, particularly at his children's expense. We recognize that an individual in father's situation — assuming that he is genuinely indigent and unable to pay — cannot be found in contempt for not paying support while incarcerated. However,

this is not a contempt proceeding; it is simply a modification proceeding. Father should not be able to escape his financial obligation to his children simply because his misdeeds have placed him behind bars. The meter should continue to run. Accordingly, we hold the father's support obligation continues to accrue during his incarceration.' " 257 Mont. at 201-02.

Additionally, citing cases from New Hampshire and Utah, the Montana court reasoned that while unemployment and diminution of earnings are often grounds for modification of a child support decree, a change in financial conditions brought about by "the voluntary waste of one's talents and assets is not reason for modification of a decree." 257 Mont. at 202. " '[A]n able bodied person who stops working . . . as a result of punishment for an intentional act, nonetheless retains . . . the duty to support his or her children.' [Citation omitted.]" 257 Mont. at 202. This reasoning being in line with the public policy of the state of Montana, the district court's order modifying father's support obligation for the period of his incarceration was reversed.

In *Ohler v. Ohler*, 220 Neb. 272, 369 N.W.2d 615 (1985), a similar result was reached upon different rationale. There, the father sought to suspend his child support obligation during his 15-year period of incarceration. Father contended that the incarceration resulted in a material change of circumstances justifying the suspension.

The *Ohler* court first indicated that modification of a child support order may be allowed because of a material change in circumstances and if it is in the best interest of the child or children for whose benefit the support was ordered. 220 Neb. at 273. The court reasoned:

"A 'material change in circumstances' has been said to elude precise and concise definition, but, rather, involves an alteration and passage from one condition to another and requires consideration of a variety of factors or circumstances, including the obligated parent's financial means, the needs of the child or children for whom the support is to be paid, the good or bad faith motive of the obligated parent in sustaining a reduction of means, and the permanence of the change. [Citation omitted.] A material change in circumstances in this context is analogous to the 'good cause' required to support a modification of alimony. [Citation omitted.]" 220 Neb. at 274.

The *Ohler* court noted that Nebraska dissolution of marriage cases are equitable in nature and that under the general maxim that one who seeks equity must come with clean hands, equity will refuse to aid a litigant who violates a statute directly connected with the matter in litigation. From that maxim, the court reasoned:

"Incarceration of the applicant necessarily means that he was found to have violated a criminal statute. It seems to us that where one seeks relief from the obligation to pay child support on the basis that he or she is incarcerated, the violation of the statute which resulted in the incarceration is directly connected with the matter of child support. Under those circumstances, equity should not and will not act to give relief.

". . . Incarceration is certainly a foreseeable result of criminal activity; we find no sound reason to relieve one of a child support obligation by virtue of the fact that he or she engaged in criminal conduct. There is no reason those who have had to step in and assume the applicant's obligation should not be reimbursed by the applicant should his future position enable him to do so.

"Further, we do not see how the best interests of the children for whom the support was ordered would be served by temporarily terminating the applicant's child support obligation." 220 Neb. at 276.

Thus, under this line of cases, as a matter of law, incarceration is not grounds for modification or suspension of a child support obligation. See also *Reid v. Reid*, 57 Ark. App. 289, 944 S.W.2d 559 (1997) (mother agreed to modification of child support award, father wanted abatement; principles of equity do not entitle father to abatement of child support on grounds of unclean hands—father incarcerated for raping daughter which bears direct connection to proceeding at hand); *Davis v. Vance*, 574 N.E.2d 330 (Ind. App. 1991) (obligor must take responsibility for the crimes committed and all the repercussions which come with breaking the law; contrary to public policy and guidelines to allow abatement of child support due to willful, unlawful act of obligor); *In re Marriage of Phillips*, 493 N.W.2d 872 (Iowa App. 1992) (obligor's incarceration for sexual abuse of stepdaughter does not constitute a change of circumstances justifying a modification; change of circumstances is due to own voluntary actions; unclean hands doctrine applicable); *State v. Nelson*, 587 So. 2d 176 (La. App. 1991) (when person commits a voluntary act, that act cannot be used to justify the extinction of a protected right like child support); *Noddin v. Nod-*

*din*, 123 N.H. 73, 455 A.2d 1051 (1983) (continuing original support order not unfair where loss of income due to incarcerated parent's misconduct; equity in jointly owned home could have been applied to support obligations; unclean hands doctrine applicable); *Matter of Knights*, 71 N.Y.2d 865, 527 N.Y.S.2d 748, 522 N.E.2d 1045 (1988) (obligor's financial hardship is solely result of his wrongful conduct resulting in imprisonment; trial court's determination that these changed financial circumstances did not warrant reduction or suspension of child support was not abuse of discretion); *Koch v. Williams*, 456 N.W.2d 299 (N.D. 1990) (obligor's incarceration for incest does not constitute a material change of circumstances justifying modification of child support; principles of equity applied; voluntarily induced change does not justify modification; public policy to protect best interests of child).

This line of cases holds, as a matter of law, that incarceration of a parent is not legal justification for modification or suspension of that person's child support obligation.

## COMPLETE-JUSTIFICATION RULE

Some jurisdictions have held that incarceration alone is justification for the suspension or modification of the inmate's child support obligation to a level appropriate to his assets and income while incarcerated.

In *Johnson v. O'Neill*, 461 N.W.2d 507 (Minn. App. 1990), the court considered whether incarceration on an unrelated offense can constitute an unjustified self-limitation of income for purposes of child support. O'Neill remained current on his child support payments until December 1988, when he was incarcerated. He then sought modification of his child support obligation. The trial court acknowledged that O'Neill's incarceration had decreased his income but concluded that because his criminal act was intentional, his incarceration was an unjustifiable self-limitation of income. The trial court imputed O'Neill's earning capacity. The appellate court reversed, finding that the doctrine of self-limitation of income had not been extended to apply to every intentional act which results in negative economic consequences. It held that the intention to commit a crime does not automatically translate into intention to

limit income. As such, the trial court's order was reversed and the case remanded for a computation of the child support obligation based on the father's actual income. 461 N.W.2d at 508.

In a similar case, *Peters v. Peters*, 69 Ohio App. 3d 275, 590 N.E.2d 777 (1990), *rev. denied* 57 Ohio St. 3d 711 (1991), the father was sentenced to 2 years' imprisonment for federal income tax and illegal drug charges. At the time of sentencing, he was already $10,000 in arrears on his support payments of $200 per week. The father requested a suspension or modification of the support orders during his incarceration. The trial court denied the motion without a hearing.

The appellate court reversed, holding that the father's situation was similar to one in which an employer terminates an individual's employment. In both instances, the individual arguably has committed some culpable act requiring the actions of the other which has resulted in a decreased income. However, the court did not believe that in either case could the elimination of income be deemed voluntary. The *Peters* court held that public policy supports such a conclusion, since to hold otherwise would possibly expose the father to criminal contempt prosecution for failure to pay child support. The court believed it would be unconscionable to criminally punish an individual for neglecting to do what state action has prevented him from doing. The court remanded for a hearing to determine what assets could be made available for purposes of child support. 69 Ohio App. 3d at 277.

Other courts have also adopted this rule which allows the obligor's incarceration to support a modification or abatement of child support. However, most require that the obligor make an affirmative showing that he or she has no assets or other income. See *Nab v. Nab*, 114 Idaho 512, 757 P.2d 1231 (Ct. App. 1988) (where noncustodial parent imprisoned for crime other than nonsupport, parent is not liable for payments while incarcerated unless he had income or assets to make such payments); *Wills v. Jones*, 340 Md. 480, 667 A.2d 331 (1995) (father's incarceration was temporary material change of circumstance justifying modification of child support; prisoner is not voluntarily impoverished unless he or she committed crime with intent of going to prison or otherwise be-

coming impoverished); *Bergen County v. Steinhauer*, 294 N.J. Super. 507, 683 A.2d 856 (1996) (father's long-term incarceration and lack of assets warranted suspension of child support obligation and arrearages; state has substantial interest in suspending arrearages as receipt of federal funds is based on child support collection statistics; recommended legislation to automatically review support orders of prisoners); *Leasure v. Leasure*, 378 Pa. Super. 613, 549 A.2d 225 (1988) (*Ohler* dissent adopted; child support payments should be suspended during incarceration where incarceration was not for remainder of father's life; upon release, court should take into consideration period of time child had to go without father's financial support); *Marriage of Blickenstaff*, 71 Wash. App. 489, 859 P.2d 646 (1993) (incarcerated father not voluntarily unemployed; remanded for proceedings on whether other assets existed); *Glenn v. Glenn*, 848 P.2d 819 (Wyo. 1993) (father sentenced to life; child support significantly reduced to lowest amount allowed by guidelines even though this amount was approximately equal to what father made in prison pay and military disability payments; obligation should be based on parent's ability to pay).

## ONE-FACTOR RULE

Some jurisdictions have the rule that incarceration is but one factor to be considered in determining a motion to modify or suspend the child support during the obligor's incarceration.

In *Oberg v. Oberg*, 869 S.W.2d 235, 238 (Mo. App. 1993), the court stated:

"As the Iowa Supreme Court points out in *In re Marriage of Vetternack*, 334 N.W.2d 761, 763 (Iowa 1983), several major trends emerge from the existing case law: (1) a growing reluctance to modify decrees; (2) a parent's current inability to pay has become less a consideration, and long range capacity to earn money has become more of a consideration; and (3) any voluntariness in a parent's diminished earning capacity has become increasingly an impediment to modification. These trends have been motivated by the policy argument that a parent who stops working as a result of incarceration or criminal conduct nonetheless retains the duty to support his children. Although incarceration is not itself a voluntary situation, it is the foreseeable consequence of behavior that is voluntary and intentional. Therefore, incarceration does not excuse the obligation to support the needs of one's children. The change in financial condition resulting from the voluntary dissipation of one's talents is not sufficient reason for modifying a child support

award. [Citations omitted.] This rule is consistent with the treatment of any parent who is voluntarily unemployed or underemployed and who accumulates arrearages because of his voluntary inability to pay. [Citation omitted.]

"The reasoning in this line of cases is convincing and is applied in this case. However, unique circumstances exist when a parent who is incarcerated does not have assets to satisfy or to continue to satisfy a court ordered child support award. The trial court will consider each such situation on a case-by-case basis. The requirement to pay child support is not punitive but is an obligation imposed by parenthood to satisfy the needs of the parent's child as completely as the parent's circumstances reasonably permit. The courts must, therefore, exercise considerable discretion in this type of case just as they must in all cases in which the financial obligation of a parent to satisfy the needs of the parent's child is at issue. In exercising its discretion to determine the appropriate amount of child support applicable to an incarcerated parent who lacks assets, the trial court must consider a variety of factors, including (1) the length of incarceration experienced for the current conviction and the anticipated remaining period of incarceration, (2) the earning potential of the incarcerated parent following release, (3) the amount of the existing child support award, and (4) the total amount of child support that will accumulate upon the incarcerated parent's discharge."

Additionally, upon release, the trial court should consider that the repayment of arrearages which accumulated during that parent's incarceration may be scheduled according to the parent's post-incarceration income. The incarcerated parent's immediate inability to pay the obligation should also be a significant factor in determining whether contempt or criminal charges are appropriate for willful failure to pay. 869 S.W.2d at 238.

Thus, *Oberg* stands for the premise that while incarceration is not a per se reason to modify an existing child support obligation, it is one factor to be taken into account in determining both the level of support and the ability to pay arrearages and future payments.

In *In re Marriage of Hamilton*, 857 P.2d 542 (Colo. App. 1993), the father moved to abate or modify the child support award, citing his incarceration as a substantial and continuing change in circumstance. The *Hamilton* court held that evidence of incarceration, standing alone, does not justify abatement or modification of the parent's obligation. Incarceration is one factor to be considered along with the intentional nature of the crime, financial circumstances, likelihood of future income, and any intention to evade

the support obligation. The effect of the incarceration on the child support obligation is left to the trial court's discretion. 857 P.2d at 544.

In *Thomasson v. Johnson*, 120 N.M. 512, 903 P.2d 254 (1995), the appellate court also concluded that incarceration standing alone does not support a showing that there is an inability to meet child support obligations. The *Thomasson* court outlined the following factors which a trial court might consider in determining whether the child support obligation should be modified: (1) the parent's assets or other sources of income which would allow payment of child support; (2) the incarcerated parent's ability to earn income in the past and in the future; (3) the length of the defendant's incarceration; and, (4) the public policies applicable, such as the best interest of the child, the unclean hands doctrine, and the nature of the crime. 120 N.M. at 514-15. See also *State ex rel. v. Ayala*, 185 Ariz. 314, 916 P.2d 504 (Ct. App. 1996) (incarceration alone not sufficient ground for modification; trial court must inquire into other assets or income and whether application of guidelines would be inappropriate and unjust and whether deviation was in best interest of child); *People ex rel. Meyer v. Nein*, 209 Ill. App. 3d 1087, 154 Ill. Dec. 436, 568 N.E.2d 436 (1991) (petition to modify child support decided on case-by-case basis; clean hands doctrine does not prohibit court from giving aid to criminal since misconduct must be in the transaction complained of; incarceration does not automatically relieve one of child support obligation; child support suspension during period of incarceration was not abuse of discretion); *In re Marriage of Vetternack*, 334 N.W.2d 761 (Iowa 1983) (father's incarceration for firing a firearm through the window of ex-wife and children's residence not sufficient justification for modification of child support where father was awarded fifty percent equity interest in marital home and equity in the house should be charged for the support payments he is unable to meet while incarcerated); *Willis and Willis*, 314 Or. 566, 840 P.2d 697 (1992) (modification allowed; where action leading to incarceration was not taken for primary purpose of avoiding support, court should determine modification on a case-by-case basis using child support formula, looking at assets, length of incarceration, future

income); *Parker v. Parker*, 152 Wis. 2d 1, 447 N.W.2d 64 (Ct. App. 1989) (trial court should consider intentional nature of the crime, likelihood of future income, and other relevant evidence).

## DISCUSSION

It is apparent from the rationale expressed in these cases from other states that, essentially, the result each reached does not rest on the statutes and prior case law of the particular state. Virtually all could have chosen any of the three options or hybrids thereof. The common thread in these opinions is that the ultimate decision rested on philosophical or public policy considerations.

Kansas is in the same situation. We could adopt any of the previously summarized three rules gleaned from the case law of other states.

Support for each position can be found in the Kansas Child Support Guidelines and our case law through analogy. The pluses and minuses attendant to each rule need to be weighed. We will consider the rules in reverse order. The one-factor rule carries some enormous negatives. One of the important goals of the guidelines is to achieve greater consistency and uniformity in child support orders. Obligors in like circumstances should be treated equally. The one-factor rule would, in large measure, rest on judicial discretion. The weight to be afforded to each pertinent factor to be considered would be up to the trial judge. In any penal institution wide variation in the final orders in the motions to modify would inevitably result, notwithstanding the similarity in the situations of many inmates.

Further, the one-factor and complete-justification rules mandate decisions on a case-by-case basis. Hearings would be required on all such motions putting further strains on the custodial parents' finances and time, and consuming large quantities of scarce judicial time. Final resolution of a particular case could be years away from the filing of the motions as the case moves through the court system at the trial and appellate levels. The concern expressed by some courts adopting the complete-justification rule that any other rule would subject the inmate to possible contempt proceeding is unwarranted. It would be a rare situation indeed that incarceration

itself could be the basis for a contempt action based on failure to pay child support by virtue of the very nature of the contempt proceedings.

Further, realistically speaking, it is difficult to see how either of these rules can be said to serve the best interests of the children involved.

On the plus side, each rule is aimed at reaching a tailor-made appropriate result in each individual case, based on the inmate's particular situation.

These rules would, however, result in restitution being favored over child support. In the case herein, respondent was ordered to pay over $45,000 in restitution as a part of his federal sentence. Had he been convicted under Kansas law, restitution would have been ordered pursuant to K.S.A. 21-4603d. While incarcerated, an inmate has no greater ability to pay restitution than child support. Why should an inmate's child support obligation be subject to modification or suspension by virtue of the parent's incarceration when the required restitution order is unaffected by incarceration?

The no-justification rule has the advantages of being a bright line rule—easy to understand and apply without a court hearing. Results would be consistent. All inmates are treated equally. The specific language utilized in some of the cases supporting this rule to the effect that incarceration is similar to quitting a job to avoid paying child support and that in both situations, the inability to pay is "voluntary" stretches reality a bit. Most inmates would have difficulty accepting the concept that their incarceration is to be considered "voluntary." It is more accurate to say that a reduction of income from a cause beyond the obligor's control (such as illness, injury, lay-off, etc.) should be considered differently from those which arise from causes within his or her control. Criminal activity foreseeably can lead to incarceration and such activity is obviously within an individual's control. Public policy considerations heavily favor the no-justification rule.

After careful consideration, we conclude that the answer to the question of law presented is "No." The incarceration of a parent, standing alone, is not legal justification for the modification or suspension of that parent's child support obligation previously deter-

mined under the Kansas Child Support Guidelines. Put another way, incarceration alone is not a change of circumstances which can justify suspension or modification of the child support obligation.

As no ground for modification other than incarceration was asserted, the district court had no legal basis for suspending respondent's child support obligation herein. The district court's order of suspension must be reversed.

The judgment of the district court is reversed.

ALLEGRUCCI, J., dissenting: I disagree with the majority's holding that incarceration of a parent is not a change in circumstances to justify the modification of an inmate's child support obligation. Such a holding completely ignores reality. It may make one feel good, but it is simply an exercise in futility. I fail to see how such a ruling is in the best interests of the child. It certainly will not provide support for the child of an inmate and will make it harder, if not impossible, for the parent to pay adequate support after he or she is released from prison. It also exposes the parent to criminal contempt for failure to pay the child support. I would adopt the "complete-justification rule," which would allow the trial court to modify the support obligation based upon the reality of the parent's financial situation.

I further disagree with the majority's treating this as a question of law. In my view, the applicable standard of review is abuse of discretion. The paramount question is what serves the best interests and welfare of the child. In determining the amount of the child support obligation, the court considers a number of factors—the most significant being the parent's ability to pay support. That factor is no less significant if the parent's inability to pay is due to sickness, loss of employment, or incarceration.

K.S.A. 1997 Supp. 60-1610 provides that the trial court may modify a child support order "when a material change in circumstances is shown." Here, the trial court found that incarceration was a material change in circumstances to justify modification of the obligation to pay support. This court has found a change in lifestyle, moving out of state, moving to a different home, change

in employment, and remarriage to be material changes in circumstances to justify a modification of a previous order of custody. In *In re Marriage of Whipp* (No. 76,766, this day decided), we hold that a "material change of circumstances is one that must be of a substantial and continuing nature to make the terms of the initial decree unreasonable." Syl. ¶ 3. In my view, a reasonable person could hold incarceration of a parent is a material change of circumstances. I would affirm the district court.

SIX, J., joins the foregoing dissenting opinion.