NOT DESIGNATED FOR PUBLICATION

No. 115,915

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
SARAH R. LEMING,
*Appellee*,

and

JUSTIN E. LEMING,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed April 21, 2017. Reversed and remanded with directions.

*Chan P. Townsley*, of O'Hara & O'Hara LLC, of Wichita, for appellant.

*Sarah R. Olmstead (Leming)*, appellee pro se.

Before PIERRON, P.J., HILL, J., and WALKER, S.J.

*Per Curiam*: A hearing for the divorce of Justin Leming and Sarah Leming (now Olmstead) was held on March 18, 2016. Justin had recently been sentenced to 122 months in the custody of the Department of Corrections (DOC) for aggravated indecent liberties with a child, with the victim being their oldest daughter. At the hearing, the district court set Justin's child support income at $120,000 and then ordered his marital property in the amount of $87,696.59 to be liquidated and put in a trust for Sarah to draw upon for child support. Justin appeals and argues the court abused its discretion when it liquidated his assets and put the money in a trust for child support and it set his child support income at $120,000 a year. We reverse and remand with directions.

1

Justin and Sarah were married October 16, 1999. They have four children, A.L.L. (born 1999), B.T.L. (born 2004), Z.C.L (born 2004), and A.L. (born 2008). Sarah filed for divorce after A.L.L. told her that Justin had been sexually abusing her since the time she had first started school. Justin confessed to law enforcement that he had sexually abused his daughter. He was charged with one count of rape and five counts of indecent liberties with a child. Justin was convicted of aggravated indecent liberties and was sentenced to the custody of the DOC for 122 months. Sarah filed for divorce on January 22, 2015.

In a temporary order filed on January 22, 2015, Justin was ordered to pay $2,202 in child support each month. He was also ordered to pay $3,000 in spousal maintenance each month. In the child support worksheet adopted by the court, Justin's gross annual income was found to be $120,000. His monthly gross income was found to be $10,000.

At the evidentiary hearing on March 18, 2016, the district court initially granted sole legal custody of the children to Sarah and found it was not in the best interests of the children to give both parents equal rights regarding the children. The reason the court granted sole custody to Sarah was due to Justin's sex offense against one of the minor children and his incarceration. For the same reason he found Justin should be deprived of information regarding the children.

At the evidentiary hearing, Sarah testified that she did not work outside of the home very often. In fact, Justin had advocated that she be a stay-at-home mom. Sarah does not have resources or sources of income other than child support. She has breast cancer that has metastasized to her liver which interferes with her ability to work outside of the home. Her doctor has given her only a few years to live.

At the time of divorce, Justin worked as an information technology director and had been earning a salary of approximately $125,000 a year for the past 5 years. From the time of their separation through March 2016, Justin paid Sarah spousal support. However, at trial she did not ask for spousal maintenance because she was focused on the children and, considering her medical prognosis, wanted whoever was going to take care of them to have sufficient funds. At the time of trial, Sarah and the children were covered under health insurance for 2 more months. After that, she was not sure what they would do for health insurance. She had looked into the marketplace and it was $1,000 and up to have coverage.

Sarah testified she had written a letter to the district court and asked that Justin be punished to the full extent of the law. She believed it was better for her family to have him receive the maximum sentence because of the horrific crime he had committed against their oldest daughter.

At the evidentiary hearing, Sarah asked the district court to impute the wage that Justin was capable of earning when determining the child support amount. She believed that in 10 years, when he was released from jail, he would be able to gain employment with a comparable salary. In fact, when he was released from jail before his sentencing, he was able to get a job within a few days. Sarah stated this demonstrated he had transferable and marketable skills in math, science, and computers that would still be relevant in the future. She also asked the judge to award her the portion of the assets that would have been given to Justin.

At the end of hearing, the district ordered Justin to pay the amount of child support set out in the temporary order—$2,202 a month. The judge stated there were assets to meet the child support obligation and ordered the amount of $87,696.59—Justin's part of marital property—to be put into a trust to be drawn upon every month for child support. The court stated it was not punishing Justin but looking at the reality of the situation; and

3

if child support was not paid, when he got out of prison he would have a large arrearage which would be difficult to pay.

The district court relied on *In re Marriage of Thurmond*, 265 Kan. 715, 962 P.2d 1064 (1998), and the cases the *Thurmond* court cited to. The court stated the amount of child support was based on the temporary order and *Thurmond* made it clear that incarceration alone was not a legal justification for suspension or modification of a parent's child support obligation. See 265 Kan. 715, Syl. According to the court, there was no evidence presented that the child support worksheets were inconsistent with the child support guidelines, so it imputed Justin's income because *Thurmond* did not allow for the modification of child support based on incarceration.

Since *Thurmond* was a case of first impression, the district court felt it necessary to go through the cases the *Thurmond* court cited to that supported its conclusion. Based on those cases, the court said it realized Justin was not saying he was not responsible for child support, but he thought it should be reduced or suspended. However, that argument was not consistent with the caselaw relied upon in *Thurmond*. The evidence presented showed that Justin had resources and assets that could fulfill his child support obligations.

Ultimately, the district court stated there was no evidence presented at the hearing that the actual division of property was not fair, just, and equitable. There was no evidence presented that the asset distribution from Sarah's exhibit was incorrect. Justin argued that 100% of his assets should not go to Sarah. The court ordered the amount of $87,696.59 to be put in a trust to be drawn on every month for child support obligations.

On appeal, Justin argues: (1) The district court abused its discretion by ordering the liquidation of his assets to fund the payment of future child support obligations; and (2) the court applied the incorrect legal standard when it determined his child support obligation.

4

A district court's division of property in a divorce action is governed by K.S.A. 2016 Supp. 23-2801 *et seq*. Appellate review is for abuse of discretion. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002); *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 715, 229 P.3d 1187 (2010). A judicial action constitutes an abuse of discretion if the action is arbitrary, fanciful, or unreasonable. *In re Marriage of Hair*, 40 Kan. App. 2d 475, 480, 193 P.3d 504 (2008). The district court has broad discretion in adjusting the property rights of parties involved in a divorce action, and its exercise of that discretion will not be disturbed by an appellate court absent a clear showing of abuse. 40 Kan. App. 2d at 480. Justin bears the burden of showing such an abuse. 40 Kan. App. 2d at 480.

The district court is not required to award to each spouse the property inherited by each during the marriage, but it is required to make a *fair* and *equitable* division of property. 40 Kan. App. 2d at 480-81. When a district court divides property in a divorce, it shall consider the factors outlined in K.S.A. 2016 Supp. 23-2802(c):

> "(1) The age of the parties; (2) the duration of the marriage; (3) the property owned by the parties; (4) their present and future earning capacities; (5) the time, source and manner of acquisition of property; (6) family ties and obligations; (7) the allowance of maintenance or lack thereof; (8) dissipation of assets; (9) the tax consequences of the property division upon the respective economic circumstances of the parties; and (10) such other factors as the court considers necessary to make a just and reasonable division of property."

Black's Law Dictionary defines equitable distribution as: "The division of marital property by a court in a divorce proceeding, under statutory guidelines that provide for a fair, but not necessarily equal, allocation of the property between the spouses." Black's Law Dictionary 655 (10th ed. 2014). The fault of either party "is not to be considered in the determination of the financial aspects of the dissolution of the marriage" unless "the

5

conduct is so gross and extreme that [the] failure to penalize [it] would, itself, be inequitable." *In re Marriage of Sommers*, 246 Kan. 652, 658-59, 792 P.2d 1005 (1990).

We believe the instant case fits into the rules set out by *Sommers*. The conduct here was so gross and extreme that the failure to penalize it would, itself, be inequitable. This is especially appropriate because of the facts of this case. Sarah will be the caregiver for the children because Justin will be in prison for a substantial amount of time due to his child mistreatment. The children will need to be supported and the marital assets are a very appropriate source for that need. Also, we must consider Sarah's medical condition which appears to be dire.

As the district court pointed out, we should look at this draconian property division as a sober look at the reality of the situation including the fact that while incarcerated, Justin will not be able to pay much in the way of child support.

We wish to emphasize that devoting one party's share of the property division to child support is almost never appropriate. We find it appropriate here only because of Justin's gross and extreme actions involving one of the children, the need for child support, Sarah's illness, and the lack of other resources.

Parental child support obligations in a divorce action are governed by statute and guidelines established by our Supreme Court. See generally K.S.A. 2016 Supp. 23-3001 *et seq.* (governing court's obligation and authority to make provisions for child support); K.S.A. 2016 Supp. 20-165 (mandating Supreme Court to adopt rules establishing child support guidelines); Kansas Child Support Guidelines (KCSG), Administrative Order No. 261 (2015 Kan. Ct. R. Annot. 111-133). The applicable standard of review depends on the question presented.

A district court's child support award is generally reviewed for abuse of discretion. *In re Marriage of Skoczek,* 51 Kan. App. 2d 606, 607, 351 P.3d 1287 (2015). The interpretation of the KCSG is a question of law subject to unlimited review. 51 Kan. App. 2d at 607.

Use of the KCSG is mandatory in a divorce action, so failure to follow the Guidelines is reversible error. *Thurmond*, 265 Kan. at 716; *Skoczek,* 51 Kan. App. 2d at 608. A district court can deviate from the amount of child support determined through use of the KCSG but must justify any such deviation through specific written findings in the journal entry about how it is in the child's best interests. 51 Kan. App. 2d at 614. Such findings are generally reviewed for substantial competent evidence and to ensure they are sufficient to support the district court's conclusions of law. See *In re Marriage of Atchison*, 38 Kan. App. 2d 1081, 1089, 176 P.3d 965 (2008). Failure to make such written findings, however, is considered reversible error. *Thurmond*, 265 Kan. at 716.

Before being incarcerated for aggravated indecent liberties with a child, Justin's gross annual income was $120,000. On the child support worksheet adopted by the court, Justin was set to pay $2,202 in child support each month. This requirement was set out in the temporary order from January 22, 2015. In its decision, the district court adopted the $2,202 in child support from the temporary order.

Justin argues his income for child support should be the federal minimum wage for a 40 hour work week due to his incarceration rather than his former salary. The district court found that *Thurmond* applied here and set the child support at $2,202, per the temporary order, because *Thurmond* is clear that incarceration alone is not legal justification for the modification of the parent's child support obligation. Justin argues this is legal error and therefore an abuse of discretion.

Because the child support was set out in the temporary order, not the final divorce decree, it is not a modification. The district court at the hearing set out the permanent order, it did not modify a permanent order. *Thurmond* addresses modification, not the creation of a permanent order. 265 Kan. at 729-30.

The KCSG states: "Absent substantial justification, it should be assumed that a parent is able to earn at least the federal minimum wage and to work 40 hours per week. Incarceration does not constitute substantial justification." Kansas Child Support Guidelines, § II.F.a (Imputed Income) (2015 Kan. Ct. R. Annot. 114). At the time of the hearing and the creation of the permanent order, Justin was incarcerated for aggravated indecent liberties and sentenced to 122 months to the Department of Corrections. Therefore, his child support should have been set for an income of the federal minimum wage for a 40 hour work week, not $120,000. Kansas Child Support Guidelines, § II.F.a.

The district court erred, and abused its discretion, in relying on *Thurmond* when it set the child support income because when it set the permanent order, it did not engage in a modification of a previous permanent order. Therefore, it also erred, and abused its discretion, when it set Justin's child support income at $120,000, when it should have set it at the federal minimum wage for a 40 hour work week since he is incarcerated. The district court is reversed and remanded consistent with this decision. This is especially appropriate because Justin's share of the marital assets are being set aside to help pay child support.

Reversed and remanded with directions.