NOT DESIGNATED FOR PUBLICATION

No. 122,636

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE MATTER OF THE MARRIAGE OF

CANDACE SCOTT,
*Appellee*,

and

JOSHUA BRADLEY SCOTT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; MONIQUE CENTENO, judge. Opinion filed March 12, 2021. Affirmed.

*Joshua B. Scott*, of Littleton, Colorado, appellant pro se.

*David J. Morgan*, of Stephen J. Blaylock, Chtd., of Wichita, for appellee.

Before HILL, P.J., GARDNER, J., and BURGESS, S.J.

PER CURIAM: Joshua B. Scott appeals the district court's denial of his motion to modify his child support obligation. Currently incarcerated in federal prison, Scott argues that the district court should have modified the amount of child support he must pay because his sole income is a small stipend he receives in exchange for prison labor. We disagree and affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND

Joshua and Candace Scott married in 2000 and had three children, born in 2001, 2006, and 2010. In February 2011, the Sedgwick County District Court granted them an absolute decree of divorce; Joshua did not appear at the divorce hearing, and the district court found him in default. The district court ordered Joshua to pay $431 per month in child support. Joshua was not good at paying child support and accumulated large arrearages.

On October 3, 2019, Joshua filed a pro se motion for modification of his child support obligation, asking the district court to modify the 2011 child support order and recompute his payment history and the amount he owed in arrearages. By this time, Joshua was incarcerated on federal drug charges.

Joshua asserted that the district court had erred in 2011 in calculating his child support obligation because it imputed to him an income based on the federal minimum wage. He claimed his methamphetamine addiction was a disability that rendered him unable to work. In support, Joshua detailed his history of severe methamphetamine and amphetamine use disorder, failed drug tests, and criminal charges and convictions as a result of his drug use. He asked the district court to recalculate his child support obligation for 2011 through 2021 based on his actual income as certified by the Social Security Administration. A little less than a week later, Joshua filed pro se motions to stay enforcement of and vacate the 2011 child support order.

The district court held a hearing on the motions on November 4, 2019. Because Joshua remained in custody, he appeared at the hearing by telephone. Candace did not appear. After denying all other aspects of Joshua's motions, the district court turned its attention to his motion for modification of child support. Joshua renewed his argument that the court had erred in 2011 by imputing income to him based on the federal

2

minimum wage when in fact he was unable to work due to his drug addiction. He asserted that in 2011 the district court failed to consider all the relevant circumstances, in particular his addiction.

In child support worksheets he submitted to the court, Joshua asserted that he made $4,495 in the first five months of 2011, after which his addiction left him unable to work, so he had no income from May 2011 until May 2017, when he began working in prison. He initially received a $45 per month stipend for his work in prison, and by the time of the November 2019 hearing he received $125 per month. He asked the district court to recalculate his present and past child support obligations using his actual income, which was zero between May 2011 and May 2017, and the amount of his prison stipend thereafter. The district court declined to do so and denied his motion to modify child support.

ANALYSIS

We review the district court's decision regarding an award of child support for abuse of discretion. *In re Marriage of Thrailkill*, 57 Kan. App. 2d 244, 257, 452 P.3d 392 (2019). "The district court abuses its discretion if its decision is based on a legal or factual error or if no reasonable person would agree with the court's decision. [Citation omitted.]" 57 Kan. App. 2d at 257. To the extent that resolution of this appeal requires interpreting Kansas child support guidelines, however, we review de novo. 57 Kan. App. 2d at 257.

Although Joshua's notice of appeal preserved his right to appeal the denial of all of his 2019 motions, his appellate brief narrows the focus to the district court's denial of his motion to modify his child support obligation going forward. Joshua argues that although he wants to pay some child support, he is simply unable to pay the ordered $431 monthly payment. In light of the amount he receives as a stipend for work done in prison, which

3

he claims is "approximately $120 each month," Joshua asserts that the district court's denial of his request for modification was arbitrary, unfair, illogical, and capricious. He contends that a more reasonable result would be to reduce his child support obligation to $40 per month.

Candace argues that Joshua has not argued or identified for this court any legal authority to support an argument that the district court was somehow bound to base a determination of a child support order on the amount of Joshua's prison stipend or that the district court did not have the authority to impute an income based on the federal minimum wage. Joshua has failed to adequately brief the issue, thereby waiving it. See *In re Marriage of Taber*, 47 Kan. App. 2d 841, 845-46, 280 P.3d 234 (2012). This would go a long way in determining that Joshua's appeal must fail. However, there are other reasons why his appeal fails.

Joshua's sole argument is that the district court's decision in ordering child support was "fundamentally unfair, illogical, and arbitrary and capricious." He argues that as long as the amount of child support remains as previously established, he will always be in arrears. He states, "I do not want to be perpetually in arrears each month."

The Child Support Guidelines in effect at the time the district court decided Joshua's motion to modify child support, stated: "Income may be imputed to either parent in appropriate circumstances." Kansas Child Support Guidelines § II.F.1. (2019 Kan. S. Ct. R. 86). The Guidelines continued: "Absent substantial justification, it should be assumed that a parent is able to earn at least the federal minimum wage and to work 40 hours per week. Incarceration does not constitute substantial justification." Kansas Child Support Guidelines § II.F.1.a. (2019 Kan. S. Ct. R. 86). That portion of the Guidelines addressed the initial computation of a parent's wages. Joshua challenged the 2011 computation of his income through his 2019 motion to vacate the child support order, but he has not renewed that argument in his appellate brief. "Where an appellant fails to brief

4

an issue, that issue is waived or abandoned." *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, Syl. ¶ 2, 294 P.3d 287 (2013). Joshua has abandoned any challenge to the initial computation of his income for child support purposes.

The Guidelines also addressed modification of child support orders explaining that "[c]ourts have continuing jurisdiction to modify child support orders to advance the welfare of the child when there is a material change of circumstances." Kansas Child Support Guidelines § V.A. (2019 Kan. S. Ct. R. 106). This provision has existed in the Guidelines for over 20 years.

Prior to the establishment of guidelines, there was no Kansas authority addressing the issue of how to handle a parent's incarceration in regard to modification of child support. In 1998, the Kansas Supreme Court assessed authority from other jurisdictions and reviewed three positions as to whether incarceration justified modification of child support:  no justification, complete justification, and the one factor rule. Kansas adopted the no justification rule.

> "The incarceration of a parent, standing alone, is not legal justification for the modification or suspension of that parent's child support obligation previously determined under the Kansas Child Support Guidelines. Put another way, incarceration alone is not a change of circumstances which can justify suspension or modification of the child support obligation." *In re Marriage of Thurmond*, 265 Kan. 715, 729-30, 962 P.2d 1064 (1998).

Our Supreme Court has neither overruled *Thurmond* nor otherwise indicated a desire to depart from the rule stated therein. We must follow that decision. See *Henderson v. Board of Montgomery County Comm'rs*, 57 Kan. App. 2d 818, 830, 461 P.3d 64, *rev. denied* 312 Kan. ___ (August 31, 2020) ("We are duty-bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position."). Under *Thurmond*, Joshua's incarceration alone cannot

5

justify modification of his child support obligation, even though that incarceration resulted in a lower income. It is quite likely that *Thurmond* served as the basis for the guidelines that followed. Based on the Guidelines in existence at the time of the filing of the motion to modify, the district court did not abuse its discretion by finding that Joshua's incarceration did not justify modifying his child support obligation.

Subsequently, the Guidelines were modified to the one factor approach providing that incarceration could be considered in addressing a modification of a child support order. In this case, the district court did not solely rely on the 2019 Guidelines, which excluded consideration of incarceration in and of itself as a basis to deny a modification of child support. The transcript reveals that the district court questioned and discussed with Joshua the amount of funds he was being paid in prison, how he calculated what he thought a fair amount of child support would be, and how he wanted to "pay something" to meet his obligation. It is clear that the district court considered all the facts as offered by Joshua. In rejecting Joshua's arguments in rendering its decision, the district court based its analysis on a basis similar to the court's reasoning in *Thurmond*. It was Joshua's own acts that got him incarcerated, and the children's needs and his obligation continued regardless of the fact of his incarceration. Ruling in a manner consistent with *Thurmond*, it cannot be said that no other reasonable person would rule in a manner consistent with the district court. There was no abuse of discretion on the part of the district court in denying Joshua's motion to modify.

Affirmed.

6