(950 P.2d 267)
No. 77,167

In the Matter of the Marriage of THADDEUS EUGENE JOHNSON, *Appellee,* and LEIGH ANN JOHNSON, *Appellant.*

Opinion filed December 19, 1997.

*Douglas L. Guill*, of Kansas Department of Social and Rehabilitation Services, of Salina, for appellant.

*Karen Black*, of Salina, for appellee.

Before MARQUARDT, P.J., PADDOCK, S.J., and MARK A. VINING, District Judge, assigned.

MARQUARDT, J.: Leigh Ann Johnson appeals from the district court's journal entry modifying Thaddeus Eugene Johnson's post-divorce child support payments.

The parties were divorced on July 2, 1990. Thaddeus was ordered to pay health insurance and $155 per month in support for the parties' minor child. On June 3, 1992, the district court increased Thaddeus' monthly child support payment to $231.

Thaddeus was employed by Exide Battery Corporation (Exide) from April 1989 until August 24, 1995. Thaddeus was terminated from Exide because he tested positive for marijuana, which was a violation of Exide's drug policy. On August 26, 1995, Thaddeus began working for a construction company, earning $6 an hour.

Approximately 1 month later, Thaddeus obtained a better paying job at Tony's Pizza Service. At Exide, Thaddeus' income was between $30,000 and $33,000 annually—almost twice as much as his income at Tony's.

On October 18, 1995, Thaddeus filed a motion to modify his child support payment. At the hearing on the motion, Leigh's counsel argued that Thaddeus' voluntary conduct caused his reduction in income and, therefore, his previous income should be imputed to him in calculating the amount of child support to be paid. The district court rejected this argument, holding: "There has been a significant change in the petitioner's financial circumstances due to an involuntary job loss and reduced income." The district court granted Thaddeus' motion to modify and lowered his monthly child support payment to $148.

Leigh argues that Thaddeus' loss of income was a result of his voluntary conduct of smoking marijuana and that it should, therefore, be considered a voluntary reduction in income. There is no published Kansas case holding that income should be imputed where voluntary conduct results in an involuntary reduction of income.

The standard of review of a district court's determination of child support is abuse of discretion. *In re Marriage of Case*, 19 Kan. App. 2d 883, 889, 879 P.2d 632, *rev. denied* 255 Kan. 1002 (1994). If reasonable persons could disagree with the propriety of the action taken by the district court, it did not abuse its discretion. *In re Marriage of Cray*, 254 Kan. 376, 387, 867 P.2d 291 (1994).

In *Case*, 19 Kan. App. 2d at 889, this court noted the general rules for modification of child support:

"A court may change or modify a prior order of child support when there is a material change in circumstances. . . . Material changes in circumstances include any change in financial circumstances of the parents which would result in a 10% or more decrease or increase and any other changes in circumstances traditionally considered by the courts. [Citation omitted.] In setting child support, the court shall consider 'all relevant factors . . . including the financial resources and needs of both parents.' [Citation omitted.] 'What constitutes a material change [in circumstances] depends on the case. . . . Most courts agree that the change should be material, involuntary, and permanent in nature.' 1 Elrod, Kansas Family Law Handbook § 14.042B, p. 14-23 (rev. 1990)."

Under the Kansas Child Support Guidelines, Supreme Court Administrative Order No. 107 (1997 Kan. Ct. R. Annot. 89), income may be imputed to the noncustodial parent if that parent is deliberately unemployed or underemployed. *In re Marriage of Cray*, 18 Kan. App. 2d 15, 27, 846 P.2d 944 (1993), *rev'd in part and modified in part on other grounds* 254 Kan. 376, 867 P.2d 291 (1994). Specifically, II.E.1.d. of the guidelines provides: "When there is evidence that a parent is deliberately underemployed for the purpose of avoiding child support, the Court may evaluate the circumstances to determine whether actual or potential earnings should be used." (1997 Kan. Ct. R. Annot. 91.) See 1 Elrod, Kansas Family Law Handbook § 14.024D, p. 14-13 (rev. 1990).

Conversely, if a reasonable person could conclude that a parent is not deliberately unemployed or underemployed, it is not an abuse of discretion for the district court to refuse to impute his or her former income in calculating the child support obligation. *Cray*, 18 Kan. App. 2d at 27.

There is no evidence that Thaddeus was deliberately attempting to lower his income to avoid paying child support. Thaddeus' uncontroverted testimony was that he attempted to retain his job at Exide when he was notified of his termination. After that attempt proved to be unsuccessful and he was terminated, Thaddeus secured new employment within 2 days of his termination. Approximately 1 month later, Thaddeus obtained a better paying job. Voluntary conduct that results in an involuntary loss of income does not necessarily determine that a parent is deliberately unemployed or underemployed. In short, the record contains evidence sufficient to enable a reasonable person to conclude that Thaddeus is not deliberately unemployed or underemployed. Thus, it was not an abuse of discretion for the district court to refuse to impute Thaddeus' former income in calculating his child support obligation.

Leigh argues that the district court should have applied the equitable doctrine of clean hands to deny relief to Thaddeus. Leigh cites *In re Marriage of Phillips*, 493 N.W.2d 872, 877 (Iowa App. 1992), and *Koch v. Williams*, 456 N.W.2d 299, 301 (N.D. 1990), where the courts invoked the clean hands doctrine to deny relief

to incarcerated individuals who sought modification of their child support obligation. The factual situation in *Koch* distinguishes it from the instant case because Thaddeus was neither charged with a crime nor incarcerated. Additionally, other courts have specifically rejected the argument that an incarcerated individual is necessarily guilty of inequitable conduct that bars the individual from seeking a modification of child support. See, *e.g., People ex rel. Meyer v. Nein,* 209 Ill. App. 3d 1087, 1088-89, 568 N.E.2d 436 (1991).

The clean hands doctrine provides that no person can obtain affirmative relief in equity with respect to a transaction in which that person has been guilty of inequitable conduct. *In re Marriage of Jones,* 22 Kan. App. 2d 753, 759, 921 P.2d 839, *rev. denied* 260 Kan. 993 (1996) (applying doctrine in child support case). The objectionable conduct must bear an immediate relation to the subject matter of the litigation and affect the relations existing between the parties. 22 Kan. App. 2d at 759. Collateral misconduct which arises outside the specific transaction that is the subject matter of the litigation does not bar equitable relief. *Green v. Higgins,* 217 Kan. 217, 221, 535 P.2d 446 (1975); *Nein,* 209 Ill. App. 3d 1087, Syl. ¶ 2 (applying rule to similar facts). The application of the clean hands doctrine is not a hard and fast rule, but is left to the discretion of the district court. *Fuqua v. Hanson,* 222 Kan. 653, 657, 567 P.2d 862 (1977).

Here, there is no evidence to support the conclusion that Thaddeus' actions were taken in an effort to reduce his child support payments, even though it indirectly had that result. The district court did not abuse its discretion in declining to exercise the clean hands doctrine to deny Thaddeus relief.

Leigh argues that the district court erred in calculating the amount of Thaddeus' health insurance credit when computing his child support obligation. Leigh contends that because Thaddeus does not incur any increased cost by insuring the parties' child, he should not have been given credit for the amount he pays for family health insurance coverage.

Thaddeus testified that he pays "about a hundred and fifty" a month for family health insurance coverage. On his child support

worksheet, Thaddeus had entered the amount as $152. Thaddeus' child support worksheet also states that the $152 excludes his personal coverage. The $152 per month pays for coverage on Thaddeus' current wife, Thaddeus and Leigh's child, and the two children from Thaddeus' current marriage.

Leigh's counsel stated that in preparing Leigh's child support worksheet, they "took the cost of family coverage over [Thaddeus'] single policy . . . and divided it by the number of people on it, and that's how [they arrived] at twenty-five dollars." Apparently $51 was subtracted from the $152 as the amount of Thaddeus' single coverage. However, Leigh states in her brief that "[t]he $152 includes that portion which is the single policy insurance cost. The actual cost of just the family plan is $101 per month." Leigh's citation to the record, however, is merely to her proposed child support worksheet.

The district court held that "the whole premium is the family insurance, not just that portion over and above the individual." The district court stated:

"[F]amily coverage is family coverage. Whether it's one additional person or four or five additional persons. So, I'm not going to proportion it. I mean the cost—he's not required by any court order to provide heath insurance for anybody else other than this child. So, the cost of whatever it cost[s], for family, the family portion of the insurance is the minimum that's going to be factored into the child support, not to divide that by how many people are covered."

As we have previously noted, the standard of review for this court's review of a district court's determination of child support is abuse of discretion. *Case*, 19 Kan. App. 2d at 889. Interpretation of the Kansas Child Support Guidelines, however, is a question of law subject to unlimited review by this court. *Scruggs v. Chandlee*, 20 Kan. App. 2d 956, 957, 894 P.2d 239 (1995).

Section V.D. of the guidelines provides:

"4. Health and Dental Insurance Premium (Line D.4.)

The increased cost to the parent for health, dental, or optometric insurance for the child is to be added to the Basic Child Support Obligation. If coverage is provided without cost to the parents, then zero should be entered as the amount. The cost of insurance coverage is entered in the column of the parent(s) providing it, and the total is entered on Line D.4.

*Worksheet Example: Parent A has a single-coverage policy. To add the children would cost an additional $125 a month. Therefore, $125 would be entered in Parent A's column and as the total on Line D.4. of the Worksheet."* (1997 Kan. Ct. R. Annot. 99-100.)

The touchstone of the guidelines on this point is that the *increased* cost is entered on line D.4. and that the parent making the payment is given credit for this amount. See Appendix I of the Kansas Child Support Guidelines (1997 Kan. Ct. R. Annot. 112-13).

District courts and hearing officers must follow the guidelines. *In re Marriage of Schletzbaum*, 15 Kan. App. 2d 504, 506, 809 P.2d 1251 (1991). The amount determined by following the guidelines creates a rebuttable presumption of the proper amount of child support. 15 Kan. App. 2d at 506. Courts that wish to use the child support adjustments to deviate from the guidelines must make the appropriate written findings. See 15 Kan. App. 2d at 506-07. A child support order entered without complying with the guidelines is an abuse of discretion. *Shaddox v. Schoenberger*, 19 Kan. App. 2d 361, 363, 869 P.2d 249 (1994).

Leigh argues that Thaddeus does not incur any additional cost for providing health insurance for the parties' child because he already carries and pays for family coverage, which would also provide coverage for the parties' child. This argument makes an assumption that has no support in the record.

The appellant has the burden to designate a record sufficient to sustain the claimed error. *McCubbin v. Walker*, 256 Kan. 276, 295, 886 P.2d 790 (1994). Assertions in an appellate brief are not sufficient to remedy inadequacies in the record on appeal. *Smith v. Printup*, 254 Kan. 315, 353, 866 P.2d 985 (1993).

Thaddeus is under court order to carry health insurance for the parties' child. The guidelines provide that the payor should be given credit for the increased cost of providing health insurance above single coverage; however, the example given does not take into consideration the factual situation that is presented here—that Thaddeus has remarried and has two other children. Even though Leigh's argument that there is no increase in cost to cover the parties' child appears to follow the guidelines, Thaddeus' argument

that the entire amount of the cost for family coverage should be included because that is the increase over single coverage also appears to follow the guidelines. Using either rationale would result in an inequitable result for one of the parties.

We hold that the guidelines require using the Multiple Family Adjustment in determining the level of child support when an increase in support is sought by the custodial parent and the non-custodial parent has children by another relationship who reside with him or her. We also hold that for child support computations, where a parent is paying for family health insurance that covers individuals from more than one family, the cost of the family coverage should be divided among the number of individuals who are covered by the insurance and that the number should be multiplied by the number of children subject to the child support order.

The undisputed evidence is that it cost Thaddeus $152 above his single health insurance coverage for family coverage. In this case, $152 should be divided by four, the number of individuals covered by the policy other than Thaddeus, which would equate to $38 per covered person. Since the parties have one child, the applicable cost for health insurance coverage is $38. Because there are two families involved, the Multiple Family Adjustment applies; therefore, the basic child support for the parties' child is $299. This computation results in a monthly child support obligation of $159 for Thaddeus.

The district court erred in its computation of child support for the parties' minor child and is hereby directed to enter an order conforming to the findings in this opinion.

Affirmed in part, reversed in part, and remanded with instructions.