2012 OK 81

**In re the Marriage of Rip GARCIA, Petitioner/Appellant,**

v.

**Lana GARCIA, Respondent/Appellee.**

No. 109,210.

Supreme Court of Oklahoma.

Oct. 2, 2012.

As Corrected Oct. 2, 2012.

Jerry L. Colclazier and Brett W. Butner, Colclazier & Associates, Seminole, Oklahoma, for the appellant.

Rob L. Pyron, Rob L. Pyron Law Firm, Seminole, Oklahoma, for the appellee.

EDMONDSON, J.

¶1 A Decree of Divorce entered August 1, 2008, granted the parties a divorce and awarded the appellee (Mother) $24,480.00 in support alimony, to be paid at the rate of $340.00 per month for a period of seventy-two months, and awarded child support in the amount of $1,058.85 per month. The award was based on the appellant's income of $5,021.00 per month as a school principal in the Allen Public School System. The appellant (Father) lost his job at Allen Public Schools and has not found other employment. Father filed a motion to modify the Decree of Divorce to reduce the amount of child support and to discontinue the support alimony. Father requested that his income be imputed at minimum wage. Mother objected on the grounds that Father either resigned his job voluntarily or committed acts that led to his dismissal, such as failing to appear at work for three days. Mother's position was that because Father's actions caused his changed circumstances, he should not be relieved of his court ordered obligations.

¶2 In an order filed January 21, 2011, Judge Olsen denied the motion to modify and imputed Father's income at the amount he was earning prior to his resignation, finding that Father's decrease in income was caused by Father's voluntary actions, was not beyond his control and was not continuing. The Court of Civil Appeals affirmed, holding that courts should not reduce an obligor's child support where the loss of income is self-inflicted, citing *DHS v. Baggett*, 1999 OK 68, 990 P.2d 235. Father petitioned for certiorari, arguing that even if the resignation is deemed "voluntary," a voluntary change in employment, where there is no bad faith or willful disregard, is not an adequate reason to refuse to modify child support, citing *Rutledge v. Rutledge*, 96 Mich.App. 621, 293 N.W.2d 651 (1980.) We granted the petition for certiorari. We find that the trial court erred in denying Father's motion to modify because his choice of resigning or being fired was not a voluntary choice, and there was no evidence that father's resignation was engineered to avoid his support obligations.

¶3 Proceedings to modify child support and support alimony are equitable in nature and the trial court will be affirmed unless the decision is against the clear weight of the evidence or erroneous in a manner that causes injustice. *Huchteman v. Huchteman*, 1976 OK 174, 557 P.2d 427, 430. The statutory authority for modification of child support orders is 43 O.S.2011 § 118I.A.1, which provides:

Child support orders may be modified upon a material change in circumstances which includes, but is not limited to, an increase or decrease in the needs of the child, an increase or decrease in the income of the parents, changes in actual annualized child care expenses, changes in the cost of medical or dental insurance, or when one of the children in the child support order reaches the age of majority or otherwise ceases to be entitled to support pursuant to the support order.

¶ 4 Modification of the payment of alimony as support is governed by 43 O.S.2011 § 134(D), which provides:

Except as otherwise provided in subsection C of this section, the provisions of any divorce decree pertaining to the payment of alimony as support may be modified upon proof of changed circumstances relating to the need for support or ability to support which are substantial and continuing so as to make the terms of the decree unreasonable to either party. Modification by the court of any divorce decree pertaining to the payment of alimony as support, pursuant to the provisions of this subsection, may extend to the terms of the payments and to the total amount awarded; provided however, such modification shall have prospective application.

¶ 5 The statutory requirement for modification of child support is that the applicant must show a material change in circumstances, such as decrease in income of the parents. For modification of support alimony, the applicant must show proof of changed circumstances relating to the ability to support that are substantial and continuing so as to make the terms of the decree unreasonable to either party. The trial judge found that Father did not meet the burden of proof to modify either child support or alimony because his decrease in income was not continuing, it was caused by his own voluntary actions and was not beyond his control. The trial judge assumed that Father's training, education and experience meant that he should be able to secure similar employment in the near future and he imputed Father's income to the amount he was earning prior to his resignation.

¶ 6 The only testimony at the trial was Father's. Father testified that the school Superintendent said, "You either sign this resignation or you are going to be fired." In support, he offered as Exhibit 2 the report denying him unemployment benefits. That report stated that on Wednesday, September 15, 2010, claimant asked the Superintendent what would happen if he didn't sign the resignation letter and the Superintendent told him he would have to terminate him. On cross-examination Father testified, "He tapped me right here like this and he said, I'll find you a job if you sign this resignation; otherwise, I am going to fire you." Father testified that he did not want a discharge on his record. Mother offered as her single exhibit the letter of resignation signed by Father. She argued that because the letter did not specifically state that he was resigning under the threat of being fired, his assertion was not tenable.

¶ 7 Father was not awarded unemployment benefits and since the date of his resignation he had found only temporary work "ripping out houses" for one month and once cleaning someone's house. Father testified the he had been doing all he could to find a full-time job in order to support his family. Father stated that he had applied for some jobs as project director and some jobs as health instructor, as well as for an administrative job in Oklahoma City. He had made 53 job applications and sent 35 resumes. His single interview, with Konawa Schools, did not result in a job. He testified that it is difficult to obtain employment with schools during the school year. At the time of the hearing, Father had paid a total of $50 for child support. Father asked that his current income be imputed at minimum wage.

¶ 8 Father testified that he still has the debts that were assigned to him in the divorce decree, that he has two judgments against him that he has been unable to pay. He testified that he has no bank accounts or savings accounts that are not in the negative. Father has remarried and has three stepchildren. His wife is paying for their expenses such as food, the mortgage payment and the payments on a new vehicle that he bought while still employed by the school. He testified that he has no equity in the vehicle.

¶ 9 The trial court and the Court of Civil Appeals both reasoned that Father's job loss was due to his own misconduct, therefore his resignation was voluntarily self-induced. The Court of Civil Appeals looked to *DHS v. Baggett*, 1999 OK 68, 990 P.2d 235, where an incarcerated father with no income was imputed as receiving at least minimum wage income. The *Baggett* court stated that when an able-bodied parent is voluntarily underemployed or unemployed and thus has no

income or a reduced income, it is proper to attribute to that individual for child support purposes either an actual monthly income based on the minimum wage or what the parent could earn. The *Baggett* court applied the "clean hands" doctrine whereby equity will refuse to lend its aid to one who has been guilty of any unlawful or inequitable conduct in the matter in which he seeks relief. The matter in which Father seeks equitable relief is his motion to modify the support obligations imposed by the divorce decree. Any inequitable conduct on Father's part was related to his job, not to the divorce-related proceedings. There was no evidence that the conduct on the job that led to Father's resignation was done in bad faith in order to avoid his court-ordered support obligations.

¶ 10 We must look at all the circumstances to determine whether a self-inflicted or voluntary reduction in income was done in bad faith in order to avoid the obligor's support obligations. In *Stephen v. Stephen*, 1997 OK 53, 937 P.2d 92, 97, the mother quit her job in order to educate her minor children at home. The father moved to modify custody and both parties sought to modify the amount of child support. The trial court imputed income to the mother equivalent to her income before she quit her job, and reduced the father's child support. We found that imputing income to the mother based on her former salary of $50,000 was inequitable and an abuse of discretion when the loss of income resulted from her choice to educate her children at home.

¶ 11 In *Miller v. Miller*, 1963 OK 167, 383 P.2d 873, the father's reduction in income and the increase in his debt burdens were due to his own bad investments in oil and gas ventures, but also to an economic downturn in the oil and gas field. The father had agreed to child support payments of $400 when his yearly income for many years had been $20,000 or more. The father had vacat-

ed his office because of lack of funds and his sole income was $1000 per month from his position as a county commissioner. The trial court reduced the father's child support obligation from $400 to $310. Both the mother and the father appealed, the father seeking to have his child support further reduced to $200 per month. We affirmed the trial court's reduction of child support to $310 based on the father's changed circumstances.

¶ 12 Other states have looked to whether a voluntary reduction in income was done in good or bad faith. In *Rutledge v. Rutledge*, 96 Mich.App. 621, 293 N.W.2d 651 (1980), the court stated that an individual should be permitted to make good faith changes in employment and the fact that the reduction in income was voluntary was not an adequate reason for refusing modification. It did not appear that father's career move was in bad faith or done to circumvent his legal obligation to support his children. In *Fidone v. Fidone*, 462 N.W.2d 710 (Iowa Ct.App.1990,) the father refused to accept a long-distance job transfer in lieu of being discharged. The court found that he had not voluntarily reduced his ability to pay child support by refusing a transfer to a location 1,200 miles away. If there was no suggestion that the job loss was engineered to avoid child support payments, then it met the statutory requirements for modification.

¶ 13 In *Taylor v. Taylor*, 189 W.Va. 515, 432 S.E.2d 785 (1993), the mother appealed from an order that found the father's income reduction was self-induced but based his child support payments solely on his unemployment compensation benefits. The mother contended that income of $2,170 per month that father was making when he resigned his job shortly before the divorce should have been attributed to him.[1] The father testified that he resigned his job because he was informed that he would be required to work in Kentucky and that he would be on call twenty-four hours a day,

---

1. The mother contended that in light of the trial master's finding of self-induced reduction in income, the master was required to attribute father's previous income to him pursuant to 6 W.Va.C.S.R. § 78–16–4 (1988), which provided that if the limitation on income is not justified, in that it is a result of a self-induced decline in income, a refusal to occupy time profitably, or an unwillingness to accept employment and earn an adequate income, the court or master may consider evidence establishing the obligor's earning capacity in the local job market and may attribute income to such obligor.

seven days per week. He secured another job before resigning, but that position was terminated due to lack of work. On appeal, the court said that the family law master's finding of self-induced decline in income did not require him to impute to father his previous income of $2,170. The court looked to the father's motivation, observing that it was apparently well-grounded in his desire not to be separated from his children and there was no evidence indicating fraud or improper motivation by the father.

¶ 14 Courts have held that where a parent was terminated from his or her job after testing positive for drug use, the resulting job loss was not voluntary or deliberate even though the use of drugs was voluntary. *See In re Marriage of Atencio,* 47 P.3d 718, 723 (Colo.Ct.App.2002), discussing *In re Marriage of Johnson,* 24 Kan.App.2d 631, 950 P.2d 267 (1997) and *Pace v. Pace,* 135 Idaho 749, 24 P.3d 66 (App.2001) (addicted mother who lost her job was not motivated in her abuse of prescription medication by a desire to shed her parental responsibilities).

¶ 15 A court must look to the particular circumstances involved and it is critical to determine whether the reduction in income was in good faith or bad faith. The trial court in the case at bar did not make that determination. The trial court concluded that because it was father's fault that he faced termination, the decision to resign was voluntary and he should not be excused from his court-ordered support obligations. A decision to resign rather than face termination is not a voluntary decision; it is coerced. There was no evidence that Father acted in bad faith by resigning in order to avoid his or her support obligations. Father testified that the Superintendent told him that he would help him find another job if he resigned. Father's testimony was that he chose to resign to improve his chances of getting another job rather than face termination proceedings, which would hurt his job prospects. If Father had not resigned and had been terminated instead, the job is still lost, along with the income from that job.

¶ 16 The trial court made no finding that Father acted in bad faith and there was no evidence that Father resigned his job in order to avoid his support obligations under the divorce decree. Father's testimony was that he had made repeated efforts to obtain suitable or comparable employment but was unable to do so. Father had not turned down any job offers and testified that he was looking for any employment at all. The court's denial of the motion to modify was against the clear weight of the evidence. The order denying the motion to modify is reversed and the cause is remanded to the trial court for recalculation of the Father's support obligations in light of his changed circumstances.

¶ 17 The stay entered by this Court on June 28, 2012, is dissolved upon issuance of the mandate. Appellee's motion for appeal-related attorney's fees is denied.

**THE OPINION OF THE COURT OF CIVIL APPEALS IS VACATED; THE ORDER OF THE TRIAL COURT DENYING PETITIONER'S MOTION TO MODIFY IS REVERSED AND THE CAUSE IS REMANDED FOR CALCULATION OF FATHER'S SUPPORT OBLIGATIONS IN LIGHT OF HIS CHANGE IN CIRCUMSTANCES.**

¶ 18 COLBERT, V.C.J., KAUGER, WATT, EDMONDSON, REIF, COMBS, GURICH, JJ., concur.

¶ 19 TAYLOR, C.J. and WINCHESTER, J., dissent.