2012 OK CIV APP 106

**CITY OF NORMAN, Oklahoma, Petitioner,**

v.

**Mark HELM and the Workers' Compensation Court, Respondents.**

**No. 110,273.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Nov. 13, 2012.

Jeff Harley Bryant, City Attorney, Rickey J. Knighton II, Assistant City Attorney, Norman, Oklahoma, for Petitioner.

W.C. Doty, The Bell Law Firm, Norman, Oklahoma, for Respondent.

DEBORAH B. BARNES, Presiding Judge.

¶ 1 Petitioner City of Norman, Oklahoma (Employer) seeks review of an Order of a three-judge panel of the Workers' Compensation Court, filed on December 22, 2011, affirming in part and modifying in part the decision of the trial court. After review of the record and applicable law, we conclude the Order of the three-judge panel is contrary to law and, therefore, we vacate the Order. We remand with directions to enter an order denying compensability.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Respondent Mark Helm (Claimant) filed a Form 3 in June of 2007 alleging that on August 28, 2005, while employed as a firefighter for Employer, he sustained a compensable injury in the form of post-traumatic stress disorder (PTSD) and depression as a result of responding "to an incident where two young boys suffocated in the trunk of a car."[1] Employer denied compensability, and a hearing was held on November 24, 2010.

¶ 3 At the hearing, Employer did not contest that Claimant was suffering from PTSD and depression as a result of the events on August 28, 2005. However, Employer argued Claimant did not sustain a compensable injury because "there is no physical injury."[2] Employer asserted that "under the Oklahoma Workers' Compensation statute, ... unless there's a physical injury, [the claim is] not compensable." Claimant's counsel responded that, based on the medical report of M. Stephen Wilson, M.D. (Dr. Wilson), PTSD "causes physiological changes in the brain itself, [and] therefore, it's a physical injury."[3]

¶ 4 Claimant testified at the hearing that as a firefighter for Employer, he was trained to respond not only to fires, but also to medical emergencies.[4] Regarding the events of August 28, 2005, Claimant testified as follows:

> It was in August, it was about a 103 degrees outside and we got a call on two small boys trapped in the trunk of a car. Upon arriving on scene, they had already gotten the boys out of the trunk and you could tell by the actions of the two young boys, one was four and one was seven, that they had been in the trunk awhile.[5]

Claimant testified that these events did not bother him "right at that time."

---

1. R., p. 3.

2. November 24, 2010 Transcript (Tr.), p. 5.

3. Tr., p. 5.

4. Tr., p. 7.

5. Tr., pp. 7–8.

¶ 5 Claimant testified that he took care of the four-year-old boy, who was still breathing but "was basically in heat stroke." Claimant, who testified that he has ten children, stated that the boy was the same age and had the same name as one of his sons. Claimant tried to cool the boy off with "breakable cool bags" and by pouring saline solution on him, and he kept track of his vital signs until an ambulance arrived, which Claimant testified took 20 to 30 minutes.

¶ 6 Claimant then accompanied the boy in the ambulance to the hospital. He testified as follows:

> When I got there, the little boy was still breathing shallow, and took him out of the ambulance on the gurney, and took him into the emergency room and they tell you what room to put them in. And we put him in that room and then that's all the firemen get to ... see of them. The rest of time you're out ... wondering what's going on. You're ... restocking the ambulance and you're sitting there wondering, ... did I do everything that I could do? [6]

Claimant testified he later found out in a local newspaper that the two boys did not survive.

¶ 7 Claimant testified that, up until the incident, "I'd been working at that time for the fire department for 15, 16 years, and been through some pretty horrific accidents and deaths, and none of them had really bothered me." [7] Claimant testified, however, that after the incident, "I started shunning away from my family, stopped going to church, started staying—not going out with my friends anymore, kind of staying away from the guys at work. Began ... to [not be able to] sleep, and if I could sleep, I would have nightmares ...." [8] He testified that he

has "been having flashbacks and nightmares again." [9]

¶ 8 In response to being asked whether "you also start[ed] drinking more than you had ever drank [sic] before," he stated, "Absolutely." [10] Claimant received treatment for his drinking problem and "quit drinking completely" after spending approximately 30 days at a treatment center, but testified that he has started drinking again.

¶ 9 Claimant was prescribed antidepressants following the incident,[11] and he testified that he takes antidepressants every day.[12] Claimant testified there were days when "I would be halfway to work, and just pull over, and just start crying, and just pick up my cell phone and call in sick." When questioned whether the antidepressants were helping, he responded, "I have my good days and my bad days." [13] Claimant testified, "I finally ended up divorced from my wife, moving out of the house. Basically, there's just no joy left in my life." [14]

¶ 10 Claimant presented the deposition and medical report of Dr. Wilson. In his medical report, Dr. Wilson states:

> Due to this work related incident and diminished self-worth, [Claimant] has developed a consequential condition of depression and [PTSD]. His symptoms include persistently depressed mood, irritability, and mood swings. He isolates himself from friends and family, has difficulty concentrating, and has difficulty making decisions. He has lost interest in many aspects of life that used to be important to him and feels that the pleasure and joy has [sic] gone out of his life. He also suffers from severe fatigue and insomnia. He continues to suffer from nightmares and flashbacks despite ... medication and counseling.[15]

6. Tr., p. 9.

7. Tr., p. 17.

8. Tr., p. 11.

9. Tr., p. 16.

10. Tr., p. 14.

11. Tr., p. 12.

12. Tr., p. 17.

13. Tr., p. 12.

14. Tr., p. 12.

15. Dr. Wilson's medical report of June 21, 2010, pp. 1–2.

¶ 11 Dr. Wilson states in his medical report that he administered a "Goldberg Depression test" to Claimant and that Claimant "scored a 50, which is consistent with moderate to severe depression." He states that, in his opinion, the major cause of Claimant's "development of depression and [PTSD]" is the "employment-related incident that [Claimant] witnessed . . . ."

¶ 12 Regarding the nature of PTSD, Dr. Wilson states in his medical report, "[p]er the MayClinic.com [sic],"

> PTSD symptoms result when a traumatic event causes and [sic] overactive adrenaline response creating neurological patterns in the brain that persist long after the triggering event. PTSD will display biochemical changes in the brain and body that differ from other psychiatric disorders and reveal a low secretion of cortisol and high secretion of catecholomines in the urine. The causes of PTSD anxiety can be caused by the brain not being able to regulate the chemicals and hormones one's body uses in response to stress. . . . Therefore, the alteration in the chemicals released can cause permanent chemical changes in the brain and body resulting in permanent disability and should, therefore, be considered an anatomical abnormality of the brain.

Regarding depression, Dr. Wilson similarly stated at his deposition, "Once you've reached the point where [depression is] a chronic condition, then underlying changes in the brain and the anatomy, as well as the neural transmitters which help control certain functions within the brain, have begun to change."[16]

¶ 13 At his deposition, Dr. Wilson stated that, for people suffering from PTSD, "there are at least three different centers of the brain [the prefrontal cortex, amygdala, and hippocampus] which . . . have been shown to have subsequent changes, both in their actual anatomy and in their neural chemical makeup." However, the following exchange took place at the deposition:

[Claimant's counsel:] . . . [I]n regards to quantifying [PTSD], there's not an MRI or CAT scan that one can do to actually see [PTSD]. Is that a fair statement?

[Dr. Wilson:] No. . . . I mean, there are new tests coming up where they're attempting to use radioactive sugars, basically, to find different areas in the brain that have increased uptake related to certain activities. That's kind of the next phase, but nothing that's in broad use for clinical data.[17]

. . . .

[Employer's counsel:] There's no empirical test that you can point to and say this is a—

[Dr. Wilson:] Can I stick him in an MRI or CT scan and get a picture like a knee or a back? No.[18]

Finally, Dr. Wilson stated at his deposition as follows:

In this case, [Claimant] found two kids . . . who were dying in the trunk of a car, in the line of duty. This wasn't like he hurt his back and now is depressed. I mean, he witnessed an extremely horrific incident and now has, you know, mental—for lack of a better term—issues—you know, a behavioral mental disorder because of it.[19]

¶ 14 Employer presented the medical report of Kent C. Hensley, M.D. (Dr. Hensley). Dr. Hensley opined that Claimant sustained no physical injury as a result of the incident.[20]

¶ 15 In its order filed on December 6, 2010, the trial court found that, on the date of the incident, "[C]laimant sustained accidental personal injury in the nature of [PTSD] and consequential PSYCHOLOGICAL OVERLAY/DEPRESSION arising out of and in the course of [C]laimant's employment." The trial court further found that the "facts surrounding [C]laimant's work and the onset of [PTSD] and resulting depression were such that shocks the conscience of the

---

**16.** Deposition of Dr. Wilson, p. 7.

**17.** Deposition of Dr. Wilson, pp. 9–10.

**18.** Deposition of Dr. Wilson, p. 18.

**19.** Deposition of Dr. Wilson, pp. 19–20.

**20.** R., p. 18.

Court." It stated in its order that "there is evidence that [PTSD] is accompanied by chemical brain changes tantamount to physical injury. The Court therefore finds that [PTSD] is a physical injury."

¶ 16 The trial court found, in addition, that Claimant "sustained 28 percent permanent partial disability due to [PTSD] and 0 percent permanent partial disability due to consequential PSYCHOLOGICAL OVERLAY/DEPRESSION, for which [C]laimant is entitled to compensation for 140 weeks at $264.00 per week, or the total amount of $36,960.00 of which 140 weeks have accrued ...." The trial court also ordered Employer to pay all reasonable and necessary medical expenses incurred by Claimant as a result of his injury up to the date of the hearing, and awarded "continuing medical maintenance for prescription medications with 12 visits per year for monitoring and counseling ...."

¶ 17 Employer appealed to a three-judge panel which affirmed in part and modified in part the trial court's order.[21] The three-judge panel modified the trial court's order by replacing the trial court's finding that Claimant sustained a compensable injury "in the nature of [PTSD] and consequential PSYCHOLOGICAL OVERLAY/DEPRESSION," with the finding that Claimant sustained a compensable injury "to the BRAIN/[PTSD] and consequential PSYCHOLOGICAL OVERLAY ...." The three-judge panel also replaced the trial court's finding that "there is evidence that [PTSD] is accompanied by chemical brain changes tantamount to physical injury," with the following: "THAT there is evidence the [PTSD] is accompanied by changes to the [C]laimant's brain (prefrontal cortex, the amygdala and the hippocampus) (Claimant's Exhibit # 1, pp. 8, 24). The Court therefore finds that [PTSD] is a physical injury to the Brain."

¶ 18 From the three-judge panel's order, Employer appeals.

## STANDARD OF REVIEW

¶ 19 The issue presented is one of statutory construction, which is a question of law. *State v. Tate*, 2012 OK 31, ¶ 7, 276 P.3d 1017, 1020. We review questions of law *de novo*. Under this standard, we have plenary, independent and non-deferential authority to determine whether the trial court erred in its legal rulings. *American Airlines v. Hervey*, 2001 OK 74, ¶ 11, 33 P.3d 47, 50.[22]

## ANALYSIS

¶ 20 Employer argues that Claimant did not sustain a compensable injury because he did not sustain a physical injury. Pursuant to the law in effect at the time of the August 28, 2005 incident, a compensable injury "means any injury or occupational illness, causing internal or external harm to the body, which arises out of and in the course of employment if such employment was the major cause of the specific injury or illness." 85 O.S. Supp.2005 § 3(13)(a). However, § 3(13)(c) provides that " '[i]njury' or 'personal injury' *shall not include mental injury that is unaccompanied by physical injury*, except in the case of rape which arises out of and in the course of employment." (Emphasis added).

¶ 21 Claimant successfully argued below that PTSD "causes physiological changes in the brain itself, [and] therefore, it's a physical injury."[23] Employer argues that PTSD constitutes a "mental injury," not a "physical injury," pursuant to the Legislature's intended meaning of those terms in § 3(13)(c). Employer argues that, to find otherwise, would render § 3(13)(c) without meaning. In Claimant's Answer Brief, he responds that

**21.** One judge dissented, stating that he would vacate the trial court's order and deny benefits. He further stated, in part, as follows:

Although I have no doubt that [C]laimant suffers significant and permanent mental impairment directly resulting from his emergency responder work duties of August 28, 2005, he did not sustain a physical injury.... Except in the case of rape, our law excludes compensability of mental injury that is unaccompanied

by physical injury. *See* 85 O.S. § 3(13)(c) and *Fenwick v. Oklahoma State Penitentiary*, 1990 OK 47, 792 P.2d 60.

**22.** Title 85 O.S.2011 § 340(D)(4) provides in pertinent part that this Court will sustain an order of the three-judge panel unless we find the order was contrary to law.

**23.** Tr., p. 5.

"due to the advance of medical technology and knowledge, one can now say that [PTSD] causes physical damage to the brain itself." [24] He argues he "suffered an injury to his brain from this incident," and "there is a physical injury to the brain when you have a diagnosis of [PTSD]."

¶ 22 We must determine whether PTSD—even as described by Dr. Wilson in his deposition and medical report—is a "mental injury" pursuant to § 3(13)(c). The primary goal of statutory construction is to ascertain and follow the intention of the Legislature. *TRW/Reda Pump v. Brewington*, 1992 OK 31, ¶ 5, 829 P.2d 15, 20.

¶ 23 In determining the legislative intent of § 3(13)(c), we are guided by *Fenwick v. Oklahoma State Penitentiary*, 1990 OK 47, 792 P.2d 60. In *Fenwick*, the claimant was an employee of a prison who, during a prison riot, was held hostage by a prison inmate for over four hours. *Id.* ¶ 2, 792 P.2d at 61. The claimant did not sustain a physical injury during the riot, *id.*, but experienced severe emotional consequences—he was subsequently diagnosed as suffering from, among other things, depression and PTSD, *id.* ¶ 5, 792 P.2d at 61. The Oklahoma Supreme Court concluded that because the claimant did not sustain any physical injury, his mental disorders were not compensable under the Workers' Compensation Act. *See Osborne v. City of Okla. City Police Dept.*, 1994 OK 105, ¶ 9, 882 P.2d 75, 77 (In *Fenwick*, "[b]ecause the claimant did not sustain any physical injury, we determined his mental disorders were not compensable under the Act."). The Court in *Fenwick* stated that it "has consistently held that physical injury must be present for a disability to be compensable." *Fenwick*, ¶ 8, 792 P.2d at 62 (footnote omitted). It stated, "Just as physical symptoms such as pain, tingling of the limbs, and nausea do not constitute accidental injury, neither does mental stress." *Id.* (footnote omitted).

¶ 24 The Legislature subsequently endorsed the Court's ruling in *Fenwick* when § 3 was amended by laws effective in 1993.

The Legislature added the following language: " 'Injury' or 'personal injury' shall not include mental injury that is unaccompanied by physical injury." 85 O.S. Supp.1993 § 3(7)(c). This language, subsequently renumbered as § 3(13)(c), is the same language applicable to Claimant's claim. [25] Pursuant to this language, the Oklahoma Supreme Court has stated that "[t]he Act requires any psychological or mental injury be accompanied by physical injury in order to receive disability benefits for a debilitating psychological condition ...." *Wal–Mart Stores, Inc. v. Reinholtz*, 1998 OK 11, ¶ 12, 955 P.2d 223, 225.

■ ¶ 25 The Supreme Court has consistently categorized mental/psychological disorders, including (in *Fenwick*) PTSD, as "mental injuries," despite their physical manifestations. Accordingly, Claimant's attempt to classify his PTSD as a physical injury pursuant to § 3(13)(c), rather than as a psychological or mental injury, is unconvincing. Although the medical community's understanding of the underlying physical ramifications of PTSD may have changed over the past two decades, this apparent advance in neuroscience has not changed the clear legislative intent expressed in § 3(13)(c). That is, while this Court has little doubt, pursuant to Dr. Wilson's medical report and deposition, that PTSD can now be described in a physical way, it is clearly a "mental injury" rather than a "physical injury" under the statute.

■ ¶ 26 Furthermore, "the Legislature will not be presumed to have done a vain and useless act in the promulgation of a statute," *TRW/Reda Pump*, 1992 OK 31, ¶ 5, 829 P.2d at 20 (citation omitted), and "an inept or incorrect choice of words" by the Legislature will not be construed "in a manner to defeat the real or obvious purpose of a legislative enactment," *id.* (citation omitted). The distinction between mental and physical injuries in § 3(13)(c) may appear inept or artificial in light of "the advance of medical technology and knowledge," described by Claimant, where "one can now say that [PTSD] causes

---

24. Claimant's Answer Brief, p. 11.

25. By law effective in 1997, the Legislature added the additional language, "except in the case of rape which arises out of and in the course of employment," which, however, is an injury not pertinent to Claimant's claim.

physical damage to the brain itself." [26] However, the possible artificiality of the distinction when viewed from a medical perspective does not defeat the obvious purpose of the legislation to deny compensation for psychological disorders unaccompanied by a non-psychological, physical injury.

¶ 27 Pursuant to § 3(13)(c), we conclude Claimant sustained mental injuries unaccompanied by a physical injury as a result of the incident on August 28, 2005. Therefore, the three-judge panel erred by finding he sustained a compensable injury.

## CONCLUSION

¶ 28 Based on our review of the facts and applicable law, we conclude, pursuant to the intended meaning of § 3(13)(c), that Claim-

ant sustained mental injuries unaccompanied by a physical injury and, therefore, his claim is not compensable. We vacate the three-judge panel's Order and remand with directions to enter an order denying compensability.

¶ 29 **VACATED AND REMANDED WITH DIRECTIONS.**

WISEMAN, J., and RAPP, J. (sitting by designation), concur.

---

26. Claimant's Answer Brief, p. 11.