NOT DESIGNATED FOR PUBLICATION

No. 123,206

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

CHRISTINE M. REES (n/k/a/ DENNING),
*Appellant*,

and

CRAIG A. REES,
*Appellee*.


MEMORANDUM OPINION

Appeal from Ellis District Court, BLAKE A. BITTEL, judge. Opinion filed July 16, 2021. Affirmed.

*Todd D. Powell* and *John T. Bird*, of Glassman Bird Powell, LLP, of Hays, for appellant.

*Ross Wichman*, of Anderson & Wichman, of Hays, for appellee.


Before ARNOLD-BURGER, C.J., GARDNER and ISHERWOOD, JJ.

PER CURIAM: Craig and Christine Rees are divorced. After a contentious 15-year custody and child support battle, Craig Rees moved the district court to modify his child support payment, citing a material change of circumstances—his voluntary termination of employment and move to another county. The district court found Craig had not deliberately changed jobs to avoid paying child support, granted his motion, and reduced his child support payment by $170. Christine appeals. Although the district court erred by relying on outdated Kansas Supreme Court Child Support Guidelines (Guidelines), the

1

evidence shows that its decision would have been the same had it applied the correct Guidelines. We thus affirm.

*Factual and Procedural Background*

Craig and Christine Rees were married for five months before Christine filed for divorce. Shortly before filing, Christine discovered she was pregnant. The district court granted the divorce in 2005 but stated it would revisit the child custody and support issues once the child was born. Roughly 15 years of motions, hearings, orders, and modifications followed. The district court terminated all of Craig's visitation rights with his daughter in July 2019. At that time, Craig's income for child support purposes was $5,842 per month.

In January 2020, Craig moved the district court to modify his child support payment, citing his voluntary decision to quit his job in Hays and move to Emporia. Craig then filed a pleading and an affidavit in support of a material change in circumstances, and the court found he was entitled to a hearing.

The district court credited Craig's testimony at the hearing. It found he had voluntarily ended his employment in Hays to relocate to Emporia and that Murphy Agri paid him $1,887.50 every two weeks. The district court found that it could impute income to Craig if he were deliberately underemployed or unemployed. But the district court found no evidence that Craig had deliberately moved or quit his job for the purpose of reducing his child support obligation. So the district court declined to impute Craig's previous wages to him. Rather, it granted Craig's motion to modify child support and reduced Craig's monthly child support obligation by $170 a month.

Christine timely appeals.

*Did the District Court Abuse its Discretion?*

*Standard of Review and Legal Background*

This court reviews the district court's child support order for abuse of discretion. *In re Marriage of Thrailkill*, 57 Kan. App. 2d 244, 257, 452 P.3d 392 (2019). The same sound discretion is vested in the district court to determine whether there has been a material change of circumstances and whether to impute income to a parent. See *In re Marriage of Schoby*, 269 Kan 114, 120-21, 4 P.3d 604 (2000) (whether material change in circumstances exists); *In re Marriage of Case*, 19 Kan. App. 2d 883, 890-91, 879 P.2d 632 (1994) (whether to impute income). "The district court abuses its discretion if its decision is based on a legal or factual error or if no reasonable person would agree with the court's decision." *In re Marriage of Thrailkill*, 57 Kan. App. 2d at 257. As the party asserting the error, Christine bears the burden of showing the district court abused its discretion. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013). To the extent that resolution of this appeal requires interpreting the Guidelines, this court reviews de novo. See *In re Marriage of Thrailkill*, 57 Kan. App. 2d at 257. When reviewing factual findings, this court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility. *State v. Betancourt*, 301 Kan. 282, 302, 342 P.3d 916 (2015).

*Analysis*

Christine argues the district court committed legal error by relying on an outdated version of the Guidelines in finding that Craig was not deliberately underemployed, thus abusing its discretion.

*Applicable law*

In determining an individual's child support obligation, the court must follow the Guidelines adopted by the Kansas Supreme Court. K.S.A. 2020 Supp. 23-3002.

K.S.A. 2020 Supp. 23-3005 governs modification of child support. Kansas district courts have continuing jurisdiction to modify child support orders when there is a material change in circumstances. Kansas Child Support Guidelines § V.A. (2020 Kan. S. Ct. R. 122). The Guidelines state: "Voluntary termination from employment will not ordinarily constitute a material change of circumstances that justifies a reduction in child support. The court may consider the circumstances surrounding termination from employment." Kansas Child Support Guidelines § V.B.5. (2020 Kan. S. Ct. R. 124). "What is a material change in circumstances is fact specific." *In re Marriage of Case*, 19 Kan. App. 2d at 890.

Although a material change in circumstances is necessary, it is not alone sufficient to warrant an adjustment to one's child support payment. "A material change in circumstances is simply a precondition that must be met by a party seeking adjustment of their child support obligation." *In re Marriage of Waggoner and Lambert*, No. 99,138, 2009 WL 1591394, at *3 (Kan. App. 2009) (unpublished opinion). But "'[b]efore such a change in circumstances can be used as a justification to reduce support, the trier of fact must be convinced the termination was for rational and sufficient reasons, and that the obligor cannot in fact obtain appropriate employment at a similar wage.'" 2009 WL 1591394, at *4.

Voluntary termination of employment is always suspect. *In re Marriage of Case*, 19 Kan. App. 2d 883, Syl. ¶ 1. And even when an obligor loses his or her job involuntarily, the obligor's actions can provide enough evidence of deliberate underemployment or unemployment for the district court to properly impute income to

4

the obligor for purposes of child support. See *In re Marriage of Bethune*, No. 101,702, 2010 WL 445958, at *3 (Kan. App. 2010) (unpublished opinion); *Hernandez v. Rider*, No. 114,102, 2016 WL 1546426, at *4. (Kan. App. 2016) (unpublished opinion).

The Kansas Supreme Court reviews and updates the Guidelines for modifying child support every four years per the Federal Mandate under Chapter 45, Section 302.56. See Kansas Child Support Guidelines § VI. (2020 Kan. S. Ct. R. 125). One notable change since the last update to the Guidelines in 2016 was to the deliberate underemployment provision. The 2016 Guidelines stated that "[w]hen there is evidence that a parent is deliberately underemployed for the purpose of avoiding child support the court may evaluate the circumstances to determine whether actual or potential earnings should be used." Kansas Child Support Guidelines § II.F.1.e. (2017 Kan. S. Ct. R. 83). See Roberts & Forsyth, *Kansas Child Support 2020: Seeing the Future of Child Support with Open Eyes*, 89 J.K.B.A. 36, 38 (July/August 2020).

The 2020 Guidelines removed the phrase "for the purpose of avoiding child support," and now state: "When there is evidence that a parent is deliberately underemployed, the court may evaluate the circumstances to determine whether actual or potential earnings should be used." Kansas Child Support Guidelines § II.F.1.e. (2020 Kan. S. Ct. R. 97). This change lessens the burden for one parent seeking to have the other parent held to his or her potential or past earnings after engaging in deliberate underemployment. See 89 J.K.B.A. at 38. The 2020 Guidelines also state: "Income may be imputed to either parent in appropriate circumstances" and that the district court may impute income when an obligor parent is deliberately unemployed or deliberately underemployed. Kansas Child Support Guidelines §§ II.F.1; II.F.1.b; II.F.1.e. (2020 Kan. S. Ct. R. 96-97).

The district court must apply the Kansas Child Support Guidelines provisions in effect at the time of the motions hearing. *In re Marriage of Roth*, 26 Kan. App. 2d 365,

368, 987 P.2d 1134 (1999); see *In re Marriage of Scott*, No. 122,636, 2021 WL 936026, at *2 (Kan. App. 2021) (unpublished opinion). And a district court's erroneous reliance on a case interpreting outdated law is legal error. *State v. Hayes*, No. 119,165, 2020 WL 7270938, at *2 (Kan. App. 2020) (unpublished opinion); *State v. Ritz*, No. 122,071, 2021 WL 302413, at *2 (Kan. App. 2021) (unpublished opinion).

*Application*

Craig alleged a material change in circumstances within three years of a previous order, and the court properly granted a hearing on the motion. See K.S.A. 2020 Supp. 23-3005(a). The hearing was to determine whether the court should base Craig's support obligation on his current income from his new employer or on his previous income because Craig had voluntarily terminated his higher-paying job. For an obligor to avoid having his or her pay imputed to the previous higher amount, the district court must be convinced that the employment termination was for rational and sufficient reasons and that the individual could not get appropriate employment at a similar wage. *In re Marriage of Waggoner and Lambert*, 2009 WL 1591394, at *4.

The facts at the hearing were undisputed. Craig testified that because the court had terminated all his visitation rights with his child, he decided to move back to Emporia, so he voluntarily quit his job in Hays. He moved back to Emporia because his parents had raised him there, his parents were still living in the family home, and his extended family lived in the area. Craig found full-time employment near Emporia with Murphy Agri and believed that this job was his best opportunity for employment in the Lyon County area. Craig did not seek other employment. Murphy Agri did not promise long-term employment and Craig gets no overtime. He makes about $20,000 a year less working at Murphy Agri than he did working in Hays. Christine did not offer any contradictory evidence or any evidence suggesting that Craig had greater employment potential in the area.

6

The district court found that Craig was not underemployed. But it relied on a case interpreting a 1997 version of the Guidelines: "Specifically, II.E.1.d. of the guidelines provides: 'When there is evidence that a parent is deliberately underemployed *for the purpose of avoiding child support*, the Court may evaluate the circumstances to determine whether actual or potential earnings should be used.' (1997 Kan. Ct. R. Annot. 91)." (Emphasis added.). *In re Marriage of Johnson*, 24 Kan. App. 2d 631, 634, 950 P.2d 267 (1997).

The district court should have applied the Guidelines in effect when Craig moved to modify child support in 2020. See *In re Marriage of Scott*, 2021 WL 936026, at *2. As of January 1, 2020, the Guidelines did not require the district court to determine whether the obligor was underemployed for the specific purpose of avoiding child support. Kansas Child Support Guidelines § II.F.1.e. (2020 Kan. S. Ct. R. 97) Rather, the relevant Guidelines required the court to determine whether the parent is deliberately underemployed and "may evaluate the circumstances to determine whether actual or potential earning should be used." Kansas Child Support Guidelines § II.F.1.e. (2020 Kan. S. Ct. R. 97).

The court held:

"Pursuant to the Kansas Child Support Guidelines income can be imputed to a non-custodial parent under certain circumstances. *Matter of Marriage of Johnson*, 24 Kan. App. 2d 631, 634, 950 P.2d 267, 270 (1997). '[I]ncome may be imputed to the noncustodial parent if that parent is deliberately unemployed or underemployed.' *Id.* at 634 (citing *In re Marriage of Cray*, 18 Kan. App. 2d 15, 27, 846 P.2d 944 (1993), *rev'd in part and modified in part on other grounds* 254 Kan. 376, 867 P.2d 291 (1994). However, if a reasonable person would conclude that the parent is not "deliberately unemployed or underemployed,' it is not an abuse of discretion for the district court to refuse to impute the former income. *Id.* (citing *Cray*, 18 Kan. App. 2d at 27, 846 P.2d

7

944). There must be evidence that the parent obligated to pay support was 'deliberately attempting to lower his income to avoid paying child support.'

"Looking at all the circumstances of this case the court cannot find evidence that, although the move was voluntary, it was done deliberately to reduce child support. As stated above the Respondent's visitation with the minor child, his only family connection to Hays, was terminated indefinitely. As such, he felt he had no reason to stay in Hays just for the employment, and wanted to be near his family, extended family and girlfriend. Although the amount is less than what he made at Hess [Services Inc.], he does work consistently 40 hours a week and has held the job for several months and has paid child support."

The first two sentences of the court's order above correctly state the law in the 2020 Guidelines. But the order's third and fourth sentences show that the district court relied on outdated Guidelines requiring proof that the obligor was deliberately underemployed for the purpose of reducing child support. It thus committed an error of law. See *Hayes*, 2020 WL 7270938, at *2; *Ritz*, 2021 WL 302413, at *2.

Christine cites cases broadly stating that use of the Guidelines is mandatory and failure to follow the Guidelines is reversible error, and we are aware of others. See *In re Marriage of Thurmond*, 265 Kan. 715, 716, 962 P.2d 1064 (1998). But even in *Thurmond* our Supreme Court recognized that there could be deviations as long as the court was able to justify them by written findings in the journal entry. 265 Kan. at 716. This court likewise has described the Guidelines as creating a rebuttable presumption, and if the court deviates from the Guidelines it must make written findings explaining its reasons. *In re Marriage of Schletzbaum*, 15 Kan. App. 2d 504, 506-07, 809 P.2d 1251 (1991) (finding a child support order which deviates from the Guidelines amount and fails to state reasons for deviation will be reversed). So we do not read *Thurmond* or similar cases to mean that every error by a district court in applying the Guidelines compels reversal.

8

Here, the district court explained that it did not believe that Craig's actions were a deliberate attempt to avoid child support. That would certainly be something the court would consider in determining whether a parent is deliberately underemployed, but for a reason that justified using the parent's current lower income. The court further explained what it clearly viewed as legitimate reasons for the move—Craig's relationship with his only family connection to Hays (his child) was terminated indefinitely; he felt he had no reason to stay in Hays just for the employment; and he wanted to be near his family, extended family, and girlfriend. The district court went on to note that "[a]lthough the amount is less than what he made at Hess, he does work consistently 40 hours a week and has held the job for several months and has paid child support." So the court adequately explained its reasons for modifying Craig's child support obligation and its belief that Craig was underemployed for a justifiable reason as stated. It viewed those reasons as sufficient to allow his modification request. And Christine did not claim that he was intentionally underemployed, nor did she give any reason for his underemployment that would justify the district court denying his request.

Moreover, legal errors are usually subject to a harmless error analysis. See generally *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021). Under the statutory harmless error test, this court will affirm the trial court despite its legal error if there is no reasonable probability that the error affected the outcome of the trial in light of the entire record. *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011).

Christine argued at the hearing that the court should impute income to Craig based on his voluntary change in employment. Similarly, on appeal, she argues only that two facts show Craig's deliberate underemployment: he voluntarily moved and changed jobs, and he earns significantly less income than he did in Hays. But the court must consider the totality of circumstances, not just these factors, in determining whether to impute income because a parent is deliberately underemployed.

Here, the totality of circumstances shows that the outcome of the case would not have been any different had the court applied the correct legal standard. The parties had a full fair opportunity to present all evidence related to the issue whether Craig was deliberately underemployed for an unjustified or unreasonable purpose, yet no evidence suggests that he was. The district court, having heard the evidence and observed the testimony of the parties, was in the best position to exercise appropriate discretion in this case. We cannot find that the district court abused its discretion.

Christine ignores the district court's findings that Craig's termination from Hess was for rational and sufficient reasons, even though it was voluntary. The court found that Craig's visitation with his child, his only family connection to Hays, was terminated indefinitely, so he felt he had no reason to stay in Hays and wanted to be near his family in the Emporia area. The record supports those findings.

And Christine never contended that Craig was deliberately underemployed for any unjustified or unreasonable purpose or that he had moved solely to reduce his child support payments. Rather, she argued that even if the district court accepted Craig's testimony, the district court should still impute to him the same income because he had voluntarily chosen to make less money. Christine did not contradict Craig's testimony that he consistently works 40 hours a week and the job he took was his best opportunity for employment in that area. No evidence thus suggested that Craig could have found more appropriate employment at a wage similar to the wage he earned in Hays.

Under the uncontested facts, and in light of the entire record, we find no reasonable probability that the error affected the outcome of the trial. *Ward*, 292 Kan. 541, Syl. ¶ 6. We thus affirm.

Affirmed.

10